UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | Master File 07 Civ. 9633 (JSR)(DFE) |
| | **ECF CASE** |
| This Document Relates To: Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al., 08 CV 9063 (JSR) (DFE) | **Electronically Filed** |

**MEMORANDUM IN SUPPORT OF THE UNDERWRITER DEFENDANTS' MOTION
TO DISMISS THE CORRECTED AMENDED COMPLAINT**

CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019
(212) 878-8000

*Attorneys for Defendants
Citigroup Global Markets Inc., Morgan
Stanley & Co. Incorporated, SunTrust
Robinson Humphrey, Inc., UBS Securities
LLC, Wachovia Capital Markets, LLC and
Wells Fargo Securities, LLC*

NYA921935.1

**TABLE OF CONTENTS**

**Page**

Introduction ............................................................................................................1

Argument ...............................................................................................................3

I.     PLEADING BY HINDSIGHT DOES NOT STATE A CLAIM UNDER SECTIONS 11 AND 12 OF THE SECURITIES ACT ........................................3

II.    THE ALLEGED FAILURE OF THE UNDERWRITER DEFENDANTS TO CONDUCT AN ADEQUATE DUE DILIGENCE INVESTIGATION DOES NOT STATE A CLAIM UNDER SECTIONS 11 OR 12 OF THE SECURITIES ACT ...............5

III.   PLAINTIFFS' SECTION 12 CLAIM SHOULD BE DISMISSED BECAUSE THEY DO NOT ALLEGE THAT THEY PURCHASED ANY SECURITY DIRECTLY FROM AN UNDERWRITER DEFENDANT ....................................6

Conclusion .............................................................................................................8

NYA921935.1

# TABLE OF AUTHORITIES

## CASES

**Page**

*Capri v. Murphy*,
    856 F.2d 473, 478 (2d Cir. 1988).................................................................7

*In re Citigroup Inc. Shareholder Derivative Litig.*,
    964 A.2d 106, 130-31 (Del. Ch. Ct. 2009) ..............................................3-4

*Coronel v. Quanta Capital Holdings Ltd.*,
    2009 WL 174656, at *13-14 (S.D.N.Y. Jan. 26, 2009) .............................3, 4

*Dartley v. ErgoBilt, Inc.*,
    2001 WL 313964, at *2 (N.D. Tex. Mar. 29, 2001) ....................................7

*DeMaria v. Andersen*,
    153 F. Supp. 2d 300, 307 (S.D.N.Y. 2001),
    *aff'd*, 318 F.3d 170 (2d Cir. 2003)...............................................................7

*In re Deutsche Telekom AG Sec. Litig.*,
    2002 WL 244597, at *4-5 (S.D.N.Y. Feb. 20, 2002)...................................8

*Galvin v. First Nat'l Monetary Corp.*,
    624 F. Supp. 154, 158 (E.D.N.Y. 1985) ......................................................6

*In re Int'l Rectifier Sec. Litig.*,
    1997 WL 529600, at *6 (C.D. Cal. Mar. 31, 1997)....................................6

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005)..................................................3

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003)..................................................7

*Phillips v. Kidder, Peabody & Co.*,
    933 F. Supp. 303, 323 (S.D.N.Y. 1996),
    *aff'd*, 108 F.3d 1370 (2d Cir. 1997) ............................................................6

*Pinter v. Dahl*,
    486 U.S. 622, 647 (1988)..........................................................................6-7

*Wilson v. Saintine Exploration & Drilling Corp.*,
    872 F.2d 1124, 1126 (2d Cir. 1989)............................................................7

NYA921935.1

**Page**

## STATUTES

15 U.S.C. § 77k............................................................................................... *passim*

15 U.S.C. § 77k(b)(3) ...........................................................................................6

15 U.S.C. § 77l................................................................................................. *passim*

15 U.S.C. § 77l(a)(2)....................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) .......................................................................................1

NYA921935.1

Defendants Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, SunTrust Robinson Humphrey, Inc., UBS Securities LLC, Wachovia Capital Markets, LLC and Wells Fargo Securities, LLC (collectively, the "Underwriter Defendants") submit this memorandum in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' Corrected Amended Class Action Complaint ("Amended Complaint").

## Introduction

Plaintiffs' amended allegations still represent a classic case of "omission by hindsight." The United States, like most other developed countries, is in the throes of a credit and liquidity crisis that is unprecedented since the 1930's, unanticipated by almost all governments and economists, and of a breadth and depth that has shocked nearly every market participant and observer. Plaintiffs allege that Merrill Lynch and the six Underwriter Defendants knew about, but failed to disclose, this impending crisis as far back as January 2007, when the first of the complained-of Merrill Lynch preferred securities and bond offerings occurred. Plaintiffs do not -- and cannot -- allege that Merrill Lynch has defaulted on any of its obligations under those offerings. Rather, Plaintiffs complain that events which were not known and could not have been anticipated at the times of the nine bond offerings and one preferred stock offering between January 2007 and May 2008 (together, the "Offerings") have caused those securities to trade below their offering prices.

Plaintiffs' theory fails because the Amended Complaint is devoid of any allegations sufficient to establish that the registration statements and prospectuses (the "Offering Materials") were materially misleading *at the time of* any of the Offerings. Further, the Offering Materials contained specific cautionary language stating that the pricing models used to value the complex

derivative securities at the heart of Plaintiffs' allegations incorporated estimates and assumptions that were difficult to determine and subject to change. Taking this cautionary language into account, no reasonable investor could have believed that the valuation estimates incorporated into the Offering Materials were immutable.

The motion to dismiss filed by the Merrill Lynch Defendants and Individual Defendants addresses the fundamental deficiencies of the Amended Complaint, and the Underwriter Defendants incorporate those arguments rather than burdening the Court with duplicative briefing. The Underwriter Defendants submit this short memorandum to set forth three additional arguments directly applicable to them.

First, Plaintiffs' Section 11 and 12 claims against the Underwriter Defendants are defective because the Amended Complaint fails to allege facts sufficient to demonstrate that the Offering Materials contained any material statements or omissions that were untrue or misleading at the time of the Offerings. Second, Plaintiffs' allegation that the Underwriter Defendants failed to conduct an adequate due diligence investigation into the statements made in the Offering Materials is not actionable under Sections 11 and 12(a)(2). Those sections do not impose any duty on underwriters to conduct due diligence. Rather, they allow underwriters to raise their "due diligence" as an affirmative defense to prospectus misstatement and omission claims under Sections 11 and 12(a)(2). Third, Plaintiffs' Section 12 claim also is defective because the Amended Complaint does not sufficiently allege that the named Plaintiffs purchased their shares from -- or had any direct contact with -- any of the Underwriter Defendants, as Section 12 requires. Plaintiffs' Section 11 and 12 claims against the Underwriter Defendants therefore should be dismissed with prejudice.

- 2 -

<u>**Argument**</u>

### I. PLEADING BY HINDSIGHT DOES NOT STATE A CLAIM UNDER SECTIONS 11 AND 12 OF THE SECURITIES ACT

The relevant inquiry under Sections 11 and 12 regarding alleged misstatements in the Offering Materials is not whether the statement later proves to be true or false, "but rather whether the facts alleged in the Complaint evince that [the defendants] knew or had reason to believe, at the time the Prospectus and Registration Statement were filed, that the statement was untrue." *Coronel v. Quanta Capital Holdings Ltd.*, 2009 WL 174656, at \*13 (S.D.N.Y. Jan. 26, 2009) (dismissing Section 11 and 12 claims against underwriters and other defendants). To plead an actionable omission under Sections 11 or 12, "a plaintiff must allege facts 'demonstrating the defendant possessed the omitted information at the time the registration statement became effective and that the defendant had a duty to disclose that information.'" *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005).

As more fully explained in the Merrill Lynch Defendants' Memorandum, the Amended Complaint fails to demonstrate that *any* statements or omissions about Merrill Lynch's exposure to risks from mortgage-related securities were materially misleading at the time of the Offerings. The illogic in Plaintiffs' position is underscored by the Delaware Court of Chancery's recent comments in *In re Citigroup Inc. Shareholder Derivative Litig.*, 964 A.2d 106 (Del. Ch. Ct. 2009). In *Citigroup*, shareholders brought a derivative action against the company's officers and directors for alleged breaches of fiduciary duty in failing to adequately protect Citigroup from exposure to the subprime lending market. The plaintiffs argued that demand was excused as futile because the directors acted in bad faith "by failing to see the warning signs of a deterioration in the subprime mortgage market and failing to cause Citigroup to change its

- 3 -

investment policy to limit its exposure to the subprime market." *Citigroup*, 964 A.2d at 130-31.

The Delaware Chancery Court rejected that argument:

> If defendants had been able to predict the extent of the problems in
> the subprime mortgage market, then they would not only have
> been able to avoid losses, but presumably would have been able to
> make significant gains for Citigroup by taking positions that would
> have produced a return when the value of subprime securities
> dropped.

*Id.* at 131 n.78.

Here, Plaintiffs' Amended Complaint alleges that good faith valuations and other statements in the Offering Materials were misleading *at the time they were made* because they were ultimately contradicted by subsequent events. Yet, as the *Citigroup* decision notes, it defies economic logic to suggest that the Underwriter Defendants knew about, but failed to act upon, those facts back when the Offerings took place. Such illogical allegations fail to state a claim under Sections 11 or 12. *See, e.g., Coronel*, 2009 WL 174656, at *14 (plaintiffs failed to sufficiently allege that a loss estimate was false at the time it was made merely because it was subsequently revised upwards and that management later announced the inadequacy of internal financial controls).

Moreover, Plaintiffs undermine their own allegations that the Offering Materials for the April and May 2008 Offerings, in particular, were misleading. As the Amended Complaint itself admits, in October 2007, Merrill Lynch "reported a $7.9 billion write-down on its CDO and subprime exposures," and shortly thereafter, Merrill Lynch's board of directors asked CEO Stan O'Neal to resign. (Am. Compl. ¶¶ 136, 138.) Then, in January 2008, Merrill Lynch:

- "reported a loss for the fourth quarter [2007] of $14.9 billion,
  which included $11.5 billion in write-downs on subprime-
  related direct exposures" (*id*. at ¶ 184);

- 4 -

- disclosed its "gross subprime-backed CDO exposure, which purportedly amounted to $30.4 billion as of year end after write-downs" (*id.* at ¶ 185); and

- disclosed that it had "$9.8 billion of Alt-A exposures (as of year-end)" (*id.* at ¶ 186).

Given those disclosures in January 2008, Plaintiffs' contention that purchasers of Merrill Lynch preferred and bond securities in April and May 2008 were misled as to Merrill Lynch's exposure to losses from mortgage-linked securities is entirely without merit.

## II.    THE ALLEGED FAILURE OF THE UNDERWRITER DEFENDANTS TO CONDUCT AN ADEQUATE DUE DILIGENCE INVESTIGATION DOES NOT STATE A CLAIM UNDER SECTIONS 11 OR 12 OF THE SECURITIES ACT

Plaintiffs also allege that each of the Underwriter Defendants "failed in its duty to make a reasonable and diligent investigation of the statements contained in the Offering Materials" and that "reasonable diligence" would have uncovered the alleged defects in the Offering Materials.[1] To the extent that Plaintiffs are claiming that the Underwriter Defendants' purported lack of due diligence is itself the basis for liability under Sections 11 or 12, they are wrong. Sections 11 and 12(a)(2) only provide a cause of action for misrepresentation or omission of a material fact which was "required to be stated [in the prospectus] or necessary to make the statements therein not misleading." 15 U.S.C. §§ 77k, 77l(a)(2). Nowhere do those statutes impose a <u>duty</u> to conduct due diligence, or provide a cause of action against an entity that did not conduct due diligence in a particular manner.

---

[1]    Am. Compl. ¶¶ 4, 50-55. *See also id.* at ¶¶ 225-26 (listing the "red flags that should have been uncovered" by the Underwriter Defendants as to Merrill Lynch's purported "errors and negligence and . . . failed risk controls").

- 5 -

Due diligence is an affirmative defense available under Section 11(b)(3) to certain parties, such as underwriters, accused of violating Sections 11 or 12(a)(2).[2]  Plaintiffs' allegations that the Underwriter Defendants failed to conduct adequate due diligence -- and therefore may not avail themselves of that affirmative defense -- cannot serve as an independent basis for a violation of Sections 11 or 12(a)(2).  *See, e.g., Galvin v. First Nat'l Monetary Corp.*, 624 F. Supp. 154, 158 (E.D.N.Y. 1985) ("an affirmative defense . . . does not give rise to a cause of action").  Rather, Plaintiffs must plead an actionable misstatement or omission in the Offering Materials, which, as discussed above, they have failed to do here.

## III. PLAINTIFFS' SECTION 12 CLAIM SHOULD BE DISMISSED BECAUSE THEY DO NOT ALLEGE THAT THEY PURCHASED ANY SECURITY DIRECTLY FROM AN UNDERWRITER DEFENDANT

Plaintiffs also fail to state a viable Section 12(a)(2) claim against the Underwriter Defendants because they do not allege that they purchased any of the securities at issue directly from any of the Underwriter Defendants.  Section 12(a)(2) provides that a person who "offers or sells a security" by means of a prospectus containing materially misleading statements or omissions "shall be liable … to the person *purchasing such security from him*."[3]  As the United States Supreme Court explained in *Pinter v. Dahl*, Section 12(a)(2) claims may therefore only be asserted against an "immediate seller," which includes only those defendants who (1) directly

---

[2]  15 U.S.C. §§ 77k(b)(3), 77l(a)(2); *see, e.g., In re Int'l Rectifier Sec. Litig.*, 1997 WL 529600, at *6 (C.D. Cal. Mar. 31, 1997) (noting that "(t)he underwriters have an additional basis upon which to avoid liability under Sections 11 and 12(2) of the 1933 Act: by establishing a 'due diligence' defense"); *Phillips v. Kidder, Peabody & Co.*, 933 F. Supp. 303, 323 (S.D.N.Y. 1996), *aff'd*, 108 F.3d 1370 (2d Cir. 1997) (under Sections 11 and 12(a)(2) "underwriters are entitled to an affirmative 'due diligence' defense if they establish that they conducted a reasonable investigation and 'had reasonable ground to believe and did believe' that the prospectus contained no omissions or misrepresentations").

[3]  15 U.S.C. § 77l(a)(2) (emphasis added).

NYA921935.1

sold the stock to plaintiff, or (2) directly solicited the plaintiff's purchase of the stock.[4] Complaints that fail to allege such "privity" must be dismissed.

For this reason, the court in *DeMaria v. Andersen*, 153 F. Supp. 2d 300, 307 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170 (2d Cir. 2003), dismissed the plaintiffs' Section 12 claim against the underwriter defendants where "the amended complaint d[id] not aver that any defendant was the immediate seller to any named plaintiff" or that any defendant "actively solicited any named plaintiff in connection with the sale" of the stock at issue.  Similarly, in *Dartley v. ErgoBilt, Inc.*, 2001 WL 313964, at \*2 (N.D. Tex. Mar. 29, 2001), the court dismissed the Section 12(a)(2) claim because the plaintiffs "do not allege any facts to support the conclusion that [the underwriter defendants] were statutory sellers as to any of the Plaintiffs" and therefore if the plaintiffs "did not buy from [the underwriter defendants] and were not solicited by them, they cannot sue [the underwriter defendants] for Section 12(a)(2) violations."[5]

Here, too, Plaintiffs fail to allege the necessary degree of privity with the Underwriter Defendants to state a claim under Section 12(a)(2).  Plaintiffs' Amended Complaint simply parrots the requirements established in *Pinter* for Section 12 liability, alleging that the Underwriters were "sellers, offerors, and/or solicitors of sales of the Bond Class Securities issued in the Offerings pursuant to the Shelf Registration Statement and Offering Materials."  (Am. Compl. ¶ 247).  The Amended Complaint then baldly states -- without any factual detail, and

---

[4]   486 U.S. 662, 647 (holding that liability under Section 12(1) applies only to those who pass title, or those who solicit securities purchases).  *See also Wilson v. Saintine Exploration & Drilling Corp.*, 872 F.2d 1124, 1126 (2d Cir. 1989) (applying the § 12(1) analysis in *Pinter* to what is now § 12(a)(2)); *Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988) (same).

[5]   *See also In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003) (dismissing the plaintiff's Section 12(a)(2) claim against the broker-dealer defendant because she did not allege that she purchased her mutual fund shares from that defendant).

- 7 -

without mentioning any of the named Plaintiffs or Underwriter Defendants by name -- that the Underwriter Defendants:

> (a) transferred title to Plaintiffs and other members of the Bond Class who purchased Bond Class Securities; (b) transferred title of Bond Class Securities to other underwriters and/or broker-dealers that then sold those securities as agents for the Underwriter Defendants; and (c) solicited the purchase of Bond Class Securities by Plaintiffs and other members of the Bond Class by means of the Shelf Registration Statement and related Prospectuses, motivated at least in part by the desire to serve the Underwriter Defendants' own financial interest and the interests of Merrill [Lynch], including but not limited to commissions on their own sales of Bond Class Securities and separate commissions on the sale of those securities by non-underwriter broker-dealers.

(Am. Compl. ¶ 248).

These general assertions do nothing to clarify *which* of the Underwriter Defendants purportedly sold the securities to *which* of the named Plaintiffs, or to establish *how* the Underwriter Defendants sold the securities *directly* to any of the named Plaintiffs. Nor do Plaintiffs allege any facts to suggest that any of the Underwriter Defendants solicited them. For these reasons, as well, Plaintiffs' Section 12(a)(2) claim against the Underwriter Defendants should be dismissed. *See, e.g., In re Deutsche Telekom AG Sec. Litig.*, 2002 WL 244597, at *4-5 (S.D.N.Y. Feb. 20, 2002) (holding that the plaintiffs' "bald allegations" that the defendants were "sellers, offerors, and/or solicitors of sales . . . by means of the Prospectus" were "insufficient" to sustain the defendant's Section 12(a)(2) liability as a seller).

## Conclusion

For the foregoing reasons, and for the reasons stated in the Merrill Lynch Defendants' and Individual Defendants' Memorandum, Plaintiffs' claims against the Underwriter Defendants in the Amended Complaint should be dismissed with prejudice.

- 8 -

NYA921935.1

Dated: March 27, 2009  Respectfully submitted,

         CLIFFORD CHANCE US LLP


         By: _____/s/ Mark Holland_____
          George A. Schieren (George.Schieren@CliffordChance.com)
          Mark Holland (Mark.Holland@CliffordChance.com)
          Mary K. Dulka (Mary.Dulka@CliffordChance.com)
          Laura J. McLaren (Laura.McLaren@CliffordChance.com)
          John J. Song (John.Song@CliffordChance.com)
         31 West 52nd Street
         New York, New York  10019
         (212) 878-8000

         *Attorneys for Defendants Citigroup Global Markets Inc.,*
         *Morgan Stanley & Co. Incorporated, SunTrust Robinson*
         *Humphrey, Inc., UBS Securities LLC, Wachovia Capital*
         *Markets, LLC and Wells Fargo Securities, LLC*

NYA921935.1