UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | Master File No. 07-cv-9633 (JSR)(DFE) |
| This Document Relates To: Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al., 08cv9063 (JSR)(DFE) | |

**MEMORANDUM OF LAW IN SUPPORT OF BOND PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
<u>CERTIFICATION OF THE BOND CLASS</u>**

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
Max W. Berger
Mark Lebovitch
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 554-1400
Facsimile:   (212) 554-1444

*Bond Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iv

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ...................................................................................................... 2

I.      THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ........................... 2

        A.      Application Of The *Grinnell* Factors Supports Approval Of The
                Settlement ...................................................................................... 3

                1.      The Complexity, Expense And Likely Duration Of The Litigation
                        Supports Approval Of The Settlement ........................................... 4

                2.      The Bond Class's Reaction To The Settlement Supports Approval
                        Of The Settlement .................................................................. 6

                3.      The Stage Of The Proceedings And The Amount of Discovery
                        Completed Supports Approval Of The Settlement .............................. 6

                4.      The Risks Of Establishing Liability And Damages Support
                        Approval Of The Settlement ........................................................ 8

                5.      The Ability Of Defendants To Withstand Greater Judgment
                        Supports Approval Of The Settlement ........................................... 12

                6.      The Range Of Reasonableness Of The Settlement Amount In Light
                        Of The Best Possible Recovery And All The Attendant Risks Of
                        Litigation Supports Approval Of The Settlement ............................. 13

        B.      The Fact That The Settlement Was The Product Of Arms'-Length
                Negotiations And Is Recommended By Bond Plaintiffs And Experienced
                Counsel Also Supports The Fairness Of The Settlement ........................... 15

II.     NOTICE TO THE BOND CLASS SATISFIED THE REQUIREMENTS OF
        RULE 23 AND DUE PROCESS ................................................................... 16

III.    THE BOND CLASS SHOULD BE FINALLY CERTIFIED FOR SETTLEMENT
        PURPOSES ......................................................................................... 17

        A.      The Bond Class Members Are Too Numerous To Be Joined ..................... 18

        B.      Common Questions Of Law And Fact Exist ....................................... 19

        C.      The Claims Of Bond Plaintiffs Are Typical Of Those Of The Bond Class .......... 20

D.   Bond Plaintiffs And Bond Counsel Fairly And Adequately Represented The Bond Class .................................................................................21

E.   The Proposed Bond Class Satisfies The Requirements Of Rule 23(b)(3) ............22

   1.   Common Questions Of Law And Fact Predominate .................................23

   2.   A Class Action Is Superior To Other Available Methods For Resolving This Litigation .........................................................................24

CONCLUSION...................................................................................................................25

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................23, 25

*Berwecky v. Bear, Stearns & Co., Inc.*,
    197 F.R.D. 65 (S.D.N.Y. 2000) ........................................................................24

*Bresson v. Thomson McKinnon Sec. Inc.*,
    118 F.R.D. 339 (S.D.N.Y. 1988) ......................................................................24

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007) ........................................................................19, 20

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...................................................................... *passim*

*Cromer Fin. Ltd. v. Berger*,
    205 F.R.D. 113 (S.D.N.Y. 2001) ......................................................................24

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ............................................................................3, 13

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ..............................................................................18

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ....................................................................................16, 17

*Fogarazzo v. Lehman Bros., Inc.*,
    No. 03 Civ. 5194 (SAS), 2009 WL 2390244 (S.D.N.Y. Aug. 4, 2009) .................................20

*Goldberger v. Integrated Res. Inc.*,
    209 F.3d 43 (2d Cir. 2000) ................................................................................3

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..........................11, 15

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................11, 16

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    No. 02 Civ 5575 (LAK), 2006 WL 903236 (S.D.N.Y. April 6, 2006) ..............................8, 13

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ......................................................................20

*In re Blech Sec. Litig.*,
    No. 94 Civ. 7696 (RWS), 2000 WL 661680 (S.D.N.Y. May 19, 2000) ...............................15

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................14, 16

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ........................................4

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .....................................................................4

*In re IAC/InterActiveCorp Sec. Litig.*,
    478 F. Supp. 2d 574 (S.D.N.Y. 2007)................................................................9

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    210 F.R.D. 476 (S.D.N.Y. 2002) ....................................................................19

*In re IPO Sec. Litig.*,
    No. 21 MC 92 (SAS), 2009 WL 1649704 (S.D.N.Y. June 10, 2009) ....................................18

*In re Luxottica Group S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) .................................................................2, 4, 15

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ..................................................................2, 4, 6

*In re Monster Worldwide, Inc. Sec. Litig.*,
    251 F.R.D. 132 (S.D.N.Y. 2008) ..................................................................23, 25

*In re NYSE Specialists Sec. Litig.*,
    No. 03 Civ. 8264 (RWS), 2009 WL 1683349 (S.D.N.Y. June 5, 2009) ...................19, 22, 23

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    191 F.R.D. 369 (S.D.N.Y. 2000) ....................................................................19

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997).............................14, 16

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ....................................8

*In re Sterling Foster & Co., Inc. Sec. Litig.*,
    238 F. Supp. 2d 480 (E.D.N.Y. 2002) .............................................................15

*In re Telik, Inc. Sec. Litig.*,
　　576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................3

*In re Veeco Instruments Inc. Sec. Litig.*,
　　No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ..........3, 16

*In re Veeco Instruments, Inc. Sec. Litig.*,
　　235 F.R.D. 220 (S.D.N.Y. 2006) ...............................................................19, 22

*In re Vivendi Universal, S.A. Sec. Litig*,
　　242 F.R.D. 76 (S.D.N.Y. 2007) .................................................................19, 23

*In re WorldCom, Inc. Sec. Litig.*,
　　219 F.R.D. 267 (S.D.N.Y. 2003) ...............................................................21, 23

*In re WorldCom, Inc. Sec. Litig.*,
　　338 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................3

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
　　No. 07 Civ. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008) ...............9

*Maley v. Del Global Techs. Corp.*,
　　186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................6, 8

*McBean v. City of New York*,
　　233 F.R.D. 377 (S.D.N.Y. 2006) .....................................................................13

*Neuberger v. Shapiro*,
　　110 F. Supp. 2d 373 (E.D. Pa. 2000) ...............................................................11

*Newman v. Stein*,
　　464 F.2d 689 (2d Cir. 1972) ...........................................................................14

*Rombach v. Chang*,
　　355 F.3d 164 (2d Cir. 2004) .............................................................................9

*Strougo v. Bassini*,
　　258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................6

*Strube v. Am. Equity Inv. Life Ins. Co.*,
　　226 F.R.D 688, 698 (M.D. Fla. 2005) ................................................................4

*Taft v. Ackermans*,
　　No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) .......................8, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
　　396 F.3d 96 (2d Cir. 2005) ....................................................................3, 15, 16

*White v. First Am. Registry, Inc.*,
    No. 04 Civ. 1611 (LAK), 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007)......................................4

## STATUTES

15 U.S.C. § 77k(e) ............................................................................................................11

15 U.S.C. § 77z-1(a)(7)......................................................................................................17

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ............................................................................................................9

Fed. R. Civ. P. 23 ........................................................................................................ *passim*

2 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 4:25 (4th ed. 2002) .................23

Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2008 Review
    and Analysis* ............................................................................................................14

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Louisiana Sheriffs' Pension and Relief Fund and Louisiana Municipal Police Employees' Retirement System (the "Bond Plaintiffs"), by and through their counsel, respectfully submit this memorandum of law in support of their motion for (i) final approval of the proposed settlement (the "Settlement") of the above-captioned consolidated class action (the "Bond Action" or "Action") and (ii) final certification of the Bond Class for purposes of the proposed Settlement.[1]

## PRELIMINARY STATEMENT

The proposed Settlement provides for the payment of $150,000,000 in cash (plus interest) for the benefit of the Bond Class. As detailed in the accompanying Bond Counsel Declaration and below, the Settlement is the result of hard fought arm's-length negotiations by experienced counsel and was achieved despite the multiple significant risks that Bond Plaintiffs faced with respect to establishing their claims and significant recoverable damages. The Amended Bond Complaint presented claims with respect to a total of ten (10) Bond Class Securities. Defendants sought dismissal of the entire case, asserting that Bond Plaintiffs had not adequately established falsity, materiality and standing, and would have added arguments as to damages and causation

---

[1] Bond Plaintiffs are simultaneously submitting herewith the Declaration of Max W. Berger and Mark Lebovitch in Support of Bond Plaintiffs' Motion for Final Approval of Class Action Settlement and Certification of the Bond Class and Motion for Approval of Plan of Allocation of Settlement Proceeds, and Bond Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Bond Counsel Declaration" or "Bond Counsel Decl."). The Bond Counsel Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action through the submission of the Settlement to the Court; the nature of the claims asserted in the Action; the negotiations leading to the Settlement; the value of the Settlement to the Class, as compared to the risks and uncertainties of continued litigation; the terms of the Plan of Allocation for the Settlement proceeds; and a description of the services Bond Counsel provided for the benefit of the Class. Unless otherwise noted, capitalized terms shall have the meanings set out in the Bond Counsel Declaration and in the Stipulation and Agreement of Settlement dated August 12, 2009 (the "Stipulation") attached as Exhibit 1 to the Bond Counsel Declaration.

in any future summary judgment motion. Even if Defendants were only successful in eliminating a few of the Bond Class Securities from the Action prior to trial, the total recoverable damages would have been drastically reduced.

Moreover, as described in the Bond Counsel Declaration, Bond Plaintiffs had several opportunities to resolve the Action for lesser amounts. Based on their assessment of the merits of the claims weighed against the attendant risks, however, they pressed forward until an offer of settlement was presented that they believed represented an excellent recovery for the Bond Class. When such an offer was presented, Bond Plaintiffs conditioned their acceptance on their being satisfied with the due diligence discovery that they demanded. Bond Plaintiffs analyzed millions of documents and interviewed multiple witnesses with knowledge of the relevant facts. Bond Plaintiffs' decision to present the Settlement for Court approval is well-informed. They believe that the $150,000,000 Settlement achieved warrants the Court's approval.

As demonstrated herein, the proposed Settlement satisfies all applicable criteria for approval. If approved, the Settlement will resolve this action against all Defendants. Bond Plaintiffs respectfully ask the Court to approve the Settlement and finally certify the Bond Class for Settlement purposes.

## ARGUMENT

## I.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement must be approved by the Court. The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *In re Merrill Lynch Tyco Research Sec. Litig.* ("*ML Tyco*"), 249 F.R.D. 124, 132 (S.D.N.Y. 2008); *In re Luxottica Group S.p.A. Sec.*

*Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).[2] Public policy favors the settlement of disputed

claims, particularly in complex class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396

F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of

settlements, particularly in the class action context.'") (citation omitted); *In re WorldCom, Inc.*

*Sec. Litig.*, 338 F. Supp. 2d 319, 337 (S.D.N.Y. 2005) ("public policy favors settlement,

especially in the case of class actions").

### A.    Application Of The *Grinnell* Factors Supports Approval Of The Settlement

The standards governing approval of class action settlements in this Circuit are well

established. In *City of Detroit v. Grinnell Corp.*, the Court of Appeals held that the following

factors should be considered in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction
> of the class to the settlement, (3) the stage of the proceedings and the amount of
> discovery completed, (4) the risks of establishing liability, (5) the risks of
> establishing damages, (6) the risks of maintaining the class action through the
> trial, (7) the ability of the defendants to withstand a greater judgment, (8) the
> range of reasonableness of the settlement fund in light of the best possible
> recovery, [and] (9) the range of reasonableness of the settlement fund to a
> possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by Goldberger*

*v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also Wal-Mart*, 396 F.3d at 117; *Telik*,

576 F. Supp. 2d at 575. "In finding that a settlement is fair, not every factor must weigh in favor

of settlement, 'rather the court should consider the totality of these factors in light of the

---

[2] The Court should also determine whether the negotiating process leading to the settlement was
fair, reasonable and adequate. *See Wal-Mart*, 396 F.3d at 116; *D'Amato v. Deutsche Bank*, 236
F.3d 78, 85 (2d Cir. 2001). Where, as here, the settlement is the product of "arm's length
negotiations conducted by experienced, capable counsel" the negotiations enjoy a presumption of
fairness. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008); *see also In re
Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5
(S.D.N.Y. Nov. 7, 2007).

particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (citation omitted); *see also ML Tyco*, 249 F.R.D. at 134. In deciding whether to approve a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *White v. First Am. Registry, Inc.*, No. 04 Civ. 1611 (LAK), 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007) (citation omitted).

### 1.    The Complexity, Expense And Likely Duration Of The Litigation Supports Approval Of The Settlement

Courts have acknowledged the "overriding public interest in favor of settlement" of class actions because it is "common knowledge that class action suits have a well deserved reputation as being most complex." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D 688, 698 (M.D. Fla. 2005) (citation and internal quotations omitted). "Securities class actions are generally complex and expensive to prosecute," *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007), and "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Luxottica*, 233 F.R.D. at 310 (citations omitted).

Bond Plaintiffs would have had to overcome numerous material hurdles in order to achieve a post-trial verdict achieving more than $150 million in this complex class action. Defendants filed three separate motions to dismiss Bond Plaintiffs' Initial Bond Complaint and, after the filing of the Amended Bond Complaint, the remaining Defendants filed two additional motions to dismiss. *See* Bond Counsel Decl. ¶¶ 20, 40. In the absence of the Settlement, even if the pending motions were denied in their entirety, this case would have required extensive discovery. In connection with the due diligence discovery conducted in this case, Merrill

4

produced to Bond Plaintiffs more than three million documents, which required Bond Counsel to assemble a team of dozens of attorneys to analyze the production in a relatively short period. Merrill also produced eight former or current Merrill employees for detailed interviews. *See* Bond Counsel Decl. ¶¶ 66-67. A litigated discovery process would have been even more costly and extensive. For example, in addition to the extensive discovery discussed above, litigated discovery would have included additional requests for production of documents, which likely would have been vigorously contested, and numerous depositions of fact witnesses.

In addition, contested motions for class certification and summary judgment would have required substantial additional time and resources. Moreover, given the highly technical nature of the alleged misrepresentations regarding complex structured financial instruments, extensive use of costly expert witnesses would have been necessary on issues such as the subprime market, valuation, and calculation of damages. *See* Bond Counsel Decl. ¶ 56. At each of these stages, Defendants' Counsel, which include many of the most respected and skillful members of the securities defense bar, would have pressed to narrow the scope of the claims to be tried and the potentially recoverable damages. Any eventual trial would have required many weeks and involved the introduction of hundreds of exhibits and vigorously contested pre-trial and *in limine* motions.

Finally, whatever the outcome of any eventual trial, it is virtually certain that appeals would be taken from any verdict. All of the foregoing would delay the ability of the Bond Class to recover *for years* — assuming, of course, that Bond Plaintiffs were ultimately successful on their claims at trial. Settlement at this juncture avoids substantial, continued and uncertain litigation and provides an immediate and significant pecuniary recovery to members of the Bond Class.

### 2. The Bond Class's Reaction To The Settlement Supports Approval Of The Settlement

The reaction of the Bond Class to the Settlement is a significant factor in considering its adequacy. *See ML Tyco*, 249 F.R.D. at 134; *Strougo v. Bassini,* 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). Thus far, the reaction of the Bond Class is overwhelmingly positive and supports approval of the Settlement. As of October 16, 2009, the Court-approved Claims Administrator, Analytics, Inc. ("Analytics"), has mailed over 100,000 copies of the Notice and Proof of Claim (collectively, the "Claim Packet") to potential Bond Class Members or their nominees. *See* Affidavit of Richard W. Simmons of Analytics, Inc. Re: (A) Mailing of the Notice and the Claim Form; (B) Publication of Notice; and (C) Report on Exclusion Requests Received (the "Simmons Affidavit" or "Simmons Aff."), Bond Counsel Decl. Ex. 2, at ¶ 15. Despite the dissemination of over 100,000 copies of the Claim Packet, as of October 16, 2009, only 11 requests for exclusion have been received, of which only six appear to be valid, and no objections to the Settlement have been received. *Id*. at ¶ 23. In contrast, 3,961 Proofs of Claims to participate in the Settlement were filed as of October 16, 2009. *Id*. at ¶ 26. The deadline for submitting objections and requesting exclusions from the Bond Class is November 9, 2009 and Bond Plaintiffs will file reply papers after that date addressing any objections or additional requests for exclusion.

### 3. The Stage Of The Proceedings And The Amount Of Discovery Completed Supports Approval Of The Settlement

Bond Counsel spent significant time and resources analyzing and litigating the key legal and factual issues in this case. Bond Counsel conducted a substantive investigation into these issues prior to initiating the lawsuit and in preparing its Amended Bond Complaint. Among other things, Bond Counsel (a) interviewed 87 former Merrill employees at all levels of the Company; (b) retained experienced derivative securities originators, underwriters, analysts and

6

other experts in the pricing of CDOs and structured finance, as well as forensic accounting and damages experts; (c) researched the subprime market in general and CDOs and monoline insurance practices in particular; and (d) reviewed extensive publicly available information concerning Merrill. *See* Bond Counsel Decl. ¶ 29.

Bond Counsel also learned the core of the defenses to the claims asserted in the Action through expedited briefing of five motions to dismiss, as well as two days of intensive oral argument before the Court. Additionally, the negotiating process in this case was exceptionally open and educational; it included direct discussions between the parties' respective damages experts, both with and without counsel present. *See* Bond Counsel Decl. ¶ 61.

Bond Counsel also has the benefit of extensive due diligence discovery. Merrill produced to Bond Plaintiffs more than three million documents, including, but not limited to, the documents that it had previously produced to the SEC and the New York Attorney General on issues closely related to the Amended Bond Complaint. Merrill separately produced documents relating to 2008 presentations to Merrill's Board, hundreds of documents relating to Merrill's merger with BofA, and thousands of documents relating to transactions in Merrill securities by certain employee benefit plans related to the Employee Retirement Income Security Act ("ERISA") litigation. Bond Counsel Decl. ¶ 66. Bond Counsel assembled a team of dozens of attorneys to analyze the production in a relatively short period. Merrill's auditor also made available numerous documents summarizing its audit binders for the 2006 through 2008 audits of Merrill and additional documents relating specifically to Merrill's valuation of real-estate related services. *Id.* In addition to analyzing these documents, Bond Counsel participated in witness interviews of eight former or current Merrill officers and employees, including its former CEO and CFO. *Id.* at ¶ 67.

As a result of Bond Counsel's investigations and due diligence discovery, Bond Counsel and Bond Plaintiffs "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ 5575 (LAK), 2006 WL 903236, at *10 (S.D.N.Y. April 6, 2006); *see In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008) ("pre-settlement informal discovery and confirmatory discovery . . . allowed the parties to develop the facts necessary to evaluate the claims and adequacy of the Settlement"); *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *6 (S.D.N.Y. Jan. 31, 2007) ("The confirmatory discovery that Lead Counsel has conducted is sufficient to provide the plaintiffs with a 'clear view of the strengths and weaknesses of their cases' and of the adequacy of the settlement."); *Maley*, 186 F. Supp. 2d at 364 (even where discovery had not begun, "Plaintiffs' Counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement"). Based on the information developed, Bond Plaintiffs and Bond Counsel are well aware of the strengths and weaknesses of their claims and the potential defenses and believe that the Settlement represents a resolution of the Action that is highly favorable to the Bond Class without the substantial risk, uncertainty, and delay of continued litigation.

### 4.    The Risks Of Establishing Liability And Damages Support Approval Of The Settlement

*Grinnell* teaches that, in assessing the fairness, reasonableness and adequacy of a settlement, courts should consider such factors as the "risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial." 495 F.2d at 463 (citations omitted). These factors all strongly support approval of the Settlement.

8

As discussed in more detail in the Bond Counsel Declaration, Bond Counsel faced substantial risks in establishing the liability of Defendants and the amount of recoverable damages. Defendants had already prevailed before the Court on the argument that the Initial Bond Complaint "sounded in fraud" and warranted application of the heightened pleading standards of Fed. R. Civ. P. 9(b). *See Rombach v. Chang*, 355 F.3d 164, 171-72 (2d Cir. 2004); *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976 (LAP), 2008 WL 4449280, at *11-*18 (S.D.N.Y. Sept. 30, 2008) (finding that Section 11 and 12(a)(2) claims sounded in fraud and dismissing complaint with prejudice under Rule 9(b)); *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 595-96 (S.D.N.Y. 2007) (concluding that Section 11 claims sounded in fraud and dismissing those claims).

Taking heed of the Court's admonitions during two days of oral argument and in the Court's February 27 Dismissal Opinion, Bond Plaintiffs and their counsel took pains to draft the Amended Bond Complaint so that it did not contain any possible "imputations of fraud." Nevertheless, the Court's prior statements suggested that the Court may well have applied Rule 9(b) to the Amended Bond Complaint. Bond Plaintiffs thus attempted to particularize the Amended Bond Complaint's allegations by detailing the "who, what, where, when, and why" of their Securities Act claims, but there could be no assurance that the Court would be satisfied with the alleged level of detail. Bond Counsel Decl. ¶¶ 54-55.

Defendants had raised and would continue to raise a number of other strong and potentially dispositive legal arguments against establishing liability. As previewed in their motions to dismiss, Defendants would have vigorously contested liability in the Action – arguing that the Offering Materials at issue in this case contained no material misrepresentations or omissions. Defendants contended that Merrill had no duty to disclose the specific amounts of its

subprime-related exposures prior to the fall of 2007 and that its filings in October 2007 and later fully disclosed the amount of its subprime-related exposures. Bond Counsel Decl. ¶¶ 42-43. Bond Plaintiffs and Bond Counsel vigorously dispute this view of Merrill's disclosure obligations, but there was a risk that the Court or a jury could have concluded that there was no duty to disclose the amount of exposures, particularly with respect to certain of the early Offerings. *Id.* at ¶ 42. Likewise, the Court or a jury might have concluded that the lengthy post-October 2007 CDO-related disclosures were legally sufficient. *Id.* at ¶ 43. Even if these arguments were only partially successful, Bond Counsel appreciated that the dismissal of claims relating to certain of the early 2007 Offerings (or, conversely, of the 2008 Offerings) would materially reduce the amount of recoverable damages. *Id.* at ¶¶ 42-43, 52.

Defendants would also have argued that the Offering Materials' disclosures concerning the valuation of Merrill's CDOs were accurate at the time they were made and that Bond Plaintiffs' allegations amount to nothing more than "negligence by hindsight." Bond Counsel Decl. ¶ 45. Defendants would have continued to attack Bond Plaintiffs' reliance on the ABX and TABX indices as benchmarks to calculate the value of Merrill's CDOs and would have argued that the statements about the value of Merrill's CDOs should have been deemed nonactionable "judgments" or "opinions." *Id.* at ¶¶ 46-48. All of these colorable legal arguments against establishing liability would have been pursued vigorously by very competent defense counsel, not only in their renewed motions to dismiss (which were pending at the time of Settlement), but also in motions for summary judgment, at trial itself, and again on appeal, if necessary. Bond Counsel considered these substantial risks in establishing liability to be a significant factor in supporting the certain recovery for the Bond Class obtained by the $150 million Settlement.

Even if Bond Plaintiffs had succeeded in establishing liability at trial, Defendants would have raised a significant number of issues with respect to damages. Defendants would argue that Merrill was victimized by the global financial system meltdown. Bond Counsel Decl. ¶ 51. Under the Securities Act, Defendants have the burden of establishing that all or part of the price decline was not due to the alleged misrepresentations. 15 U.S.C. § 77k(e). Nevertheless, Defendants would have presented strong negative causation arguments that most of the price declines in the securities at issue were attributable to the global financial crisis or were unrelated to specific Merrill-related disclosures. *See Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 379-80 (E.D. Pa. 2000) (strength of defendants' negative causation argument supported approval of the settlement); *see also Taft*, 2007 WL 414493, at *6 ("External factors such as the industry-wide telecommunications 'meltdown' could make loss causation difficult to prove."). Indeed, Chad Coffman, Bond Plaintiffs' damages expert, is submitting herewith a declaration making clear that it was highly unlikely that Bond Plaintiffs would have presented a damages model to a jury that failed to incorporate reasonable levels of negative causation. *See* Declaration of Chad Coffman ("Coffman Decl."), Bond Counsel Decl. Ex. 4, at ¶¶ 14-15.

Moreover, the multiple complex issues in this case relating to both liability – particularly issues relating to the valuation and pricing of CDOs, asset-backed securities, and other structured finance instruments – and to the calculation of damages would have required a significant amount of expert testimony from a substantial number of experts on both sides, thereby establishing the well-recognized risks attendant to a "battle of the experts." *See Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("'battle of the experts' as to proper methods of valuation . . . creates a significant obstacle to plaintiffs in establishing liability"); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418,

11

426-27 (S.D.N.Y. 2001) ("[i]n such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses").[3]

Finally, even if Bond Plaintiffs achieved a favorable jury verdict after trial, there is no doubt Defendants would have appealed in a case of this magnitude.  Any appeal would significantly delay any distribution of funds to the Bond Class even if a verdict were affirmed, and of course Bond Plaintiffs would face the risk of reversal and having to relitigate the case in the trial court.

In light of these risks, Bond Counsel believes that the immediate and certain recovery of a $150 million cash settlement – rather than recovery of an uncertain amount, or possibly no recovery, after years of costly litigation – represents an excellent result for the Bond Class.

### 5.   The Ability Of Defendants To Withstand Greater Judgment Supports Approval Of The Settlement

The Settlement here was negotiated less than a year after the collapse of two of Merrill's sizable competitors, Bear Stearns and Lehman Brothers, and at a time of substantial uncertainty in the financial industry.  Bond Plaintiffs recognized Merrill's tenuous financial position when the case was commenced and that valuable claims could become virtually worthless in a Merrill bankruptcy filing if Bank of America shareholders did not vote to approve the acquisition.  Even in early 2009, after Merrill and Bank of America had received billions of dollars in government funds to stay afloat, Merrill's ability to survive an adverse judgment was subject to doubt.  The

---

[3]  The risks of maintaining the broadest possible class through trial also supports approval of the Settlement.  Defendants had challenged Bond Plaintiffs' standing to assert claims on two of the substantial Bond Offerings.  Bond Counsel Decl. ¶¶ 49-50.  Had litigation continued, Defendants could be expected to vigorously contest the propriety of a certifying a class including all ten Bond Class Securities, which could substantially impair the potential recoverable damages.

long term effect of the changes in the financial industry and the government bailouts on these corporations remained unclear. Also, even after Bank of America closed its acquisition of Merrill, Bond Plaintiffs faced the risk that an adverse judgment (or other financial troubles) could invite Bank of America to allow its wholly-owned Merrill subsidiary to file for bankruptcy protection.

Moreover, this factor is of lesser importance in comparison with the strong considerations favoring the Settlement, most notably the risks to the Bond Class of establishing liability and damages and the reasonableness of the settlement amount in light of these risks. *See, e.g., D'Amato*, 236 F.3d at 86 ("defendants' ability to withstand a higher judgment . . . standing alone, does not suggest that the settlement is unfair"); *McBean v. City of New York,* 233 F.R.D. 377, 388 (S.D.N.Y. 2006) ("the ability of defendants to pay more, on its own, does not render the settlement unfair, especially where the other *Grinnell* factors favor approval"); *AOL Time Warner*, 2006 WL 903236, at *12 ("the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair").

### 6. The Range Of Reasonableness Of The Settlement Amount In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation Supports Approval Of The Settlement

The last two substantive factors courts consider are the range of reasonableness of the settlement amount in light of: (i) the best possible recovery and (ii) litigation risks. In analyzing these last two factors, the issue for the Court is not whether the settlement represents the "best possible recovery," but how the settlement relates to the strengths and weaknesses of the case. *Grinnell*, 495 F.2d at 463. The court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Id.* at 462 (citations omitted). Courts agree that the determination of a "reasonable" settlement "is not susceptible of a

13

mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997). Instead, "in any case there is a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact . . . and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *5 (S.D.N.Y. July 27, 2007). Bond Plaintiffs submit that the Settlement is well within the range of reasonableness in light of the best possible recovery and all the attendant risks of litigation.

Bond Plaintiffs' damages expert, Chad Coffman, conducted several different analyses of the maximum damages that could be established at trial. His tentative conclusion – which optimistically assumed that the Offerings for all ten Bond Class Securities remained part of the case – was that if Bond Plaintiffs presented aggressive damage calculations taking into account some measure of negative causation, Bond Plaintiffs would present a jury with recoverable damages in the range of $900 million to $1 billion. Bond Counsel Decl. Ex. 4, Coffman Decl. ¶ 15. Accordingly, the $150 million Settlement represents roughly 15% to 16.7% of the best possible recovery at trial. In light of the significant risks discussed above – which could have substantially reduced the amount of the best possible recovery at trial by eliminating certain of the Offerings from the case or which could have resulted in a finding of no liability at all – the $150 million cash recovery represents an excellent result for the Bond Class in light of the range of possible recoveries and the risks of continued litigation.[4]

---

[4] One recent analysis has found that the median settlement recovery in securities cases alleging only Section 11 or 12(a)(2) claims is 6.5% of the total estimated damages. *See* Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2008 Review and Analysis* at 10 (attached hereto as Exhibit A). Moreover, Courts have frequently found recoveries similar or

**B.    The Fact That The Settlement Was The Product Of
Arms'-Length Negotiations And Is Recommended By Bond Plaintiffs
And Experienced Counsel Also Supports The Fairness Of The Settlement**

The Settlement was the result of vigorously contested, arm's-length negotiations. "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart*, 396 F.3d at 116 (citation omitted); *Luxottica*, 233 F.R.D. at 315 ("An assumption of correctness attaches to a class settlement reached in arm's-length negotiations . . . ."); *In re Sterling Foster & Co., Inc. Sec. Litig.*, 238 F. Supp. 2d 480, 484 (E.D.N.Y. 2002) ("[a] strong presumption of fairness attaches to proposed settlements that have been negotiated at arm's-length").

The recommendations of Bond Plaintiffs and Bond Counsel also support the fairness of the Settlement.  Bond Plaintiffs took an active role in this litigation, as envisioned by the PSLRA, and have approved the Settlement. *See* Joint Declaration of Randall Roche, General Counsel of Louisiana Municipal Police Employees' Retirement System, and Osey McGee, Jr., Director of Louisiana Sheriffs' Pension and Relief Fund, in Support of Bond Plaintiffs' Motion for Final Approval of Class Action Settlement and Certification of the Bond Class and Motion for Approval of Plan of Allocation of Settlement Proceeds, and Bond Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Bond Plaintiffs' Declaration" or "Bond Plaintiffs' Decl."), Bond Counsel Decl. Ex. 5, at ¶¶ 8-11.  A settlement

---

less substantial than the current one to be within the range of reasonableness for settlement. *See, e.g.*, *Hicks*, 2005 WL 2757792, at *7 (in case involving Section 11 and 12(a)(2) claims, the court found that a settlement representing 3.8% of plaintiffs' damage calculation "within the range of reasonableness"); *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2000 WL 661680, at *4 (S.D.N.Y. May 19, 2000) (approving settlement representing 5% to 17% of plaintiffs' estimated damages on Section 11 and 12(2) claims).

reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness." *Veeco,* 2007 WL 4115809, at *5; *see EVCI,* 2007 WL 2230177, at *4 (same). "Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement." *Id.* at *4.[5]

Moreover, Bond Counsel, who have extensive experience prosecuting complex securities class actions and are intimately familiar with the facts of this case, believe that the Settlement is not just fair and adequate, but is an excellent result for the Bond Class. Bond Counsel Decl. ¶ 5. This opinion is entitled to "great weight." *PaineWebber*, 171 F.R.D. at 125; *see also Veeco,* 2007 WL 4115809, at *12; *Am. Bank Note Holographics*, 127 F. Supp. at 430.

## II.    NOTICE TO THE BOND CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

The Notice provided to the Bond Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). Rule 23(e)(1) requires that notice of the settlement be "reasonable" – it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

---

[5]  Additionally, Lead Plaintiff in the Consolidated Securities Action formally approved the terms of the Settlement and authorized Bond Counsel to take all action necessary to gain Court approval of the Settlement. Bond Counsel Decl. ¶ 65.

Both the substance of the Notice and the method of its dissemination to potential Bond Class Members satisfied these standards. The Court-approved Notice included all the information required by Federal Rule of Civil Procedure 23(c)(2)(B) and Section 27(a)(7) of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(7), including: (a) an explanation of the nature of the action and the class claims; (b) a definition of the class certified; (c) the amount of the Settlement; (d) a description of the Plan of Allocation; (e) an explanation of the reasons why the parties are proposing the Settlement; (e) a statement indicating the attorneys' fees and costs that will be sought; (f) a description of Class Members' rights to opt-out or object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; and (g) notice of the binding effect of a judgment on Bond Class members. *See* Notice, attached as Ex. A to Simmons Aff.

In accordance with the Court's Order Preliminarily Approving Settlement and Providing for Notice dated August 21, 2009 (the "Preliminary Approval Order"), beginning on September 4, 2009, the Claims Administrator caused over 100,000 copies of the Claim Packet to be mailed by first-class mail to potential Bond Class Members. *See* Bond Counsel Decl. Ex. 2, Simmons Aff. ¶ 15. On September 14, 2009, the Court-approved Publication Notice was published in the national edition of *The Wall Street Journal* and over the *PR Newswire*. *Id.* at ¶ 16. This combination of individual first-class mail to all Bond Class members identified with reasonable effort, supplemented by notice in a widely-circulated publication, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see Eisen*, 417 U.S. at 173-75.

## III.    THE BOND CLASS SHOULD BE FINALLY CERTIFIED FOR SETTLEMENT PURPOSES

In its Preliminary Approval Order, the Court preliminarily certified a Settlement Class (also referred to as the "Bond Class") consisting of "all persons and entities who purchased or

otherwise acquired any Bond Class Securities (as listed in the Settlement Stipulation at paragraph 1(e)) during the time period from the first date on which any of the Bond Class Securities were offered through and including January 15, 2009, and were allegedly damaged thereby." Preliminary Approval Order ¶ 2.[6]  As set forth below, because all requirements for class certification under Rule 23 have been met, Bond Plaintiffs request that the Court grant final certification of the Bond Class.

Before certifying a class for settlement purposes, the Court must ensure that the requirements of Rules 23(a) and (b) have been met. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006); *In re IPO Sec. Litig.*, No. 21 MC 92 (SAS), 2009 WL 1649704, at *4, *6 (S.D.N.Y. June 10, 2009).  Bond Plaintiffs request certification of the Bond Class pursuant to the numerosity, commonality, typicality and adequacy requirements of Rule 23(a)(1)-(4) and the predominance and superiority requirements of Rule 23(b)(3).  As demonstrated below, each of these requirements is satisfied and the proposed Bond Class therefore warrants final certification.

A.    **The Bond Class Members Are Too Numerous To Be Joined**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see In re IPO*, 2009 WL 1649704, at *6.  To satisfy this requirement, "the difficulty or inconvenience of joining all members of the class [must] make

---

[6] "Excluded from the Settlement Class are Merrill; BAC; the Individual Defendants; members of the immediate families of the Individual Defendants; the Underwriter Defendants; the Former Defendants; any entity in which any Defendant, Former Defendant or BAC has or had a controlling interest; the current and former directors and officers of or partners in: (i) Merrill; (ii) BAC; (iii) any of the Underwriter Defendants; or (iv) any of the Former Defendants, and the legal representatives, heirs, successors, or assigns of any such excluded person or entity, provided that any Investment Vehicle shall not be deemed an excluded person or entity by definition.  Also excluded from the Settlement Class are those persons or entities who timely and validly request exclusion from the Settlement Class." Preliminary Approval Order ¶ 2; *see also* Stipulation ¶ 1(*ll*).

use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 504 F.3d 229, 244-45 (2d Cir. 2007).

Here, the proposed Bond Class includes all persons who purchased or acquired any of the ten Bond Class Securities during the Class Period and were allegedly damaged thereby. The face value of each Offering was at least $1 billion and the total face value of all the Bond Class Offerings was over $24 billion. *See* Amended Bond Complaint ¶ 157 (Docket # 33). The Notice has been mailed to over 100,000 persons and, as of October 16, 2009, the Claims Administrator has received over 3,900 Proofs of Claim. Bond Counsel Decl. Ex. 2, Simmons Aff. ¶¶ 15, 26. Thus, while the precise number of Bond Class Members is still unknown, it is readily apparent that the numerosity requirement is satisfied. *See, e.g.*, *In re NYSE Specialists Sec. Litig.*, No. 03 Civ. 8264 (RWS), 2009 WL 1683349, at *13 (S.D.N.Y. June 5, 2009) ("[n]umerosity is presumed when a class consists of forty members or more"); *In re Vivendi Universal, S.A. Sec. Litig,* 242 F.R.D. 76, 83 (S.D.N.Y. 2007) (same).

### B.    Common Questions Of Law And Fact Exist

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. Even a single common legal or factual question will be sufficient to satisfy the commonality requirement. *See, e.g., NYSE Specialists*, 2009 WL 1683349, at *14; *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006). In a securities action, where plaintiffs allege that "putative class members have been injured by similar material misrepresentations and omissions," the commonality requirement is satisfied. *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002); *see also Vivendi*, 242 F.R.D. at 84. The commonality requirement is likewise met "[w]here the facts as alleged show that Defendants' course of conduct concealed material information from the entire putative class." *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000).

In this Action, there are numerous common legal and factual issues, and the same facts giving rise to the claims of the proposed class representatives also give rise to absent Bond Class Members' claims. The common legal and factual issues include, among others:

    a.    whether the Shelf Registration Statements and the Offering Materials contained misstatements or omissions of material fact;

    b.    whether Defendants violated the Securities Act of 1933 as alleged in the Amended Bond Complaint; and

    c.    the proper measure of damages.

Amended Bond Complaint at ¶ 198. Although the Action alleges material misstatements and omissions in Offering Materials associated with ten separate public Offerings, the alleged misstatements and omissions across all Offerings are substantially similar, and determination of Defendants' liability would turn on common questions such as the scope of Merrill's duty to disclose its subprime-related exposure, whether the Offering Materials' disclosures concerning this exposure were complete and accurate when made, and the proper valuation of the exposure. Certain Defendants' Section 11 and Section 12(a)(2) affirmative defenses of due diligence and reasonable care would also be common to all Bond Class Members. Thus, the commonality requirement of Rule 23(a)(2) is satisfied by the facts alleged in the present Action.

### C.    The Claims Of Bond Plaintiffs Are Typical Of Those Of The Bond Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Claims are "typical" where – as here – they arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. *See Cent. States*, 504 F.3d at 245; *Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194 (SAS), 2009 WL 2390244 at *2 (S.D.N.Y. Aug. 4, 2009). The typicality requirement of Rule 23(a)(3) is liberally construed, and "typical" does not mean "identical." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 105 (S.D.N.Y. 1999). The

critical question is whether the representative plaintiffs and absent class members can point to the same common "course of conduct" to support a claim for relief. Courts have recognized that "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (citation omitted).

Here, the claims asserted by Bond Plaintiffs are typical, if not identical, to the claims of other Bond Class Members. The Complaint alleges that Defendants violated Sections 11, 12(a)(2) and 15 of the Securities Act by making public statements that misrepresented or omitted material facts in connection with a series of public securities Offerings. At least one of the representative plaintiffs purchased securities in each of the ten Bond Class Securities offerings and has standing to assert the Securities Act claims arising out of that Offering.[7] The claims of the representative plaintiffs are based on precisely the same theories as the claims of the absent Bond Class Members and would be proven by the same evidence. Thus, the requirements of Rule 23(a)(3) are satisfied.

**D.     Bond Plaintiffs And Bond Counsel Fairly
         And Adequately Represented The Bond Class**

Rule 23(a)(4) requires that representative plaintiffs fairly and adequately protect the interests of the class. To determine whether a named plaintiff will be an adequate class representative, courts inquire whether: "1) plaintiff's interests are antagonistic to the interest of

---

[7]   Responding to the Court's comments during oral argument regarding standing, the Amended Bond Complaint named five institutional investors as Additional Named Plaintiffs: NECA-IBEW Pension Trust Fund Pension Plan; Iron Workers Locals 40, 361, 417 Union Security Funds; Iron Workers Local 580 Joint Funds; City of Pontiac Police and Fire Retirement System; and City of Pontiac General Employees Retirement System.

other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *NYSE Specialists,* 2009 WL 1683349, at \*18 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

As discussed above, Bond Plaintiffs' claims arise from the same course of conduct as, and are typical of, the claims of the Bond Class. Bond Plaintiffs and all Bond Class Members share an interest in proving the alleged misrepresentations and obtaining redress. *See Veeco*, 235 F.R.D. at 239 (finding adequacy where named plaintiffs had suffered losses and would have to prove the same wrongdoing – defendants' making of false statements and material omissions during the class period – as other class members).

In addition, Bond Plaintiffs retained experienced, capable counsel to represent the Bond Class. Bernstein Litowitz Berger & Grossmann LLP has successfully pursued and resolved a multitude of complex class actions in courts throughout the United States. Bond Counsel Decl. ¶ 99. Furthermore, the proposed $150 million Settlement obtained for the Bond Class is further evidence that Bond Plaintiffs and their counsel have fairly and adequately protected the interests of all Bond Class Members, and will continue to do so. Accordingly, the adequacy requirement of Rule 23(a)(4) is met in this Action.

### E.     The Proposed Bond Class Satisfies The Requirements Of Rule 23(b)(3)

In addition to the four requirements of Rule 23(a), a certifiable class must also satisfy one of the three subparts of Rule 23(b). Bond Plaintiffs here seek class certification under Rule 23(b)(3), which requires that:

> the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy.

Fed. R. Civ. P. 23(b)(3). This rule is designed to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotations omitted).

### 1.    <u>Common Questions Of Law And Fact Predominate</u>

The predominance inquiry normally focuses "on the legal or factual questions that qualify each class member's case as a genuine controversy . . . [and] tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "Predominance will be established if 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *WorldCom,* 219 F.R.D. at 287-88 (citation omitted); *see also In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 136 (S.D.N.Y. 2008). As the Supreme Court has noted, predominance is "a test readily met in certain cases alleging . . . securities fraud." *Amchem,* 521 U.S. at 625; *see also NYSE Specialists*, 2009 WL 1683349, at *20; *Vivendi*, 242 F.R.D. at 90. "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." 2 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 4:25 (4th ed. 2002).

In this Action, it is alleged that all Bond Class members were subjected to, and harmed by, Defendants' uniform course of conduct in issuing materially false and misleading statements in the Offering Materials. The common legal and factual questions pertaining to Defendants' alleged misstatements and omissions, such as the scope of Merrill's duty to disclose its subprime-related exposure; whether the Offering Materials' disclosures concerning this exposure were complete and accurate when made; and the proper valuation of the exposure, predominate

over any individual questions, notwithstanding the fact that Defendants' alleged misstatements were made in connection with several separate securities Offerings. *See Berwecky v. Bear, Stearns & Co., Inc.*, 197 F.R.D. 65, 69 (S.D.N.Y. 2000) (predominance was established despite the fact ten different securities were involved because defendants' liability would be determined based on a course of conduct common to entire class); *Bresson v. Thomson McKinnon Sec. Inc.*, 118 F.R.D. 339, 343 (S.D.N.Y. 1988) (predominance was established in action involving a series of limited partnerships with different prospectuses because the alleged misrepresentations in each prospectus were similar and arose from a common course of conduct and the alleged omissions were common to all class members).

### 2.    A Class Action Is Superior To Other Available Methods For Resolving This Litigation

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Matters pertinent to this finding include:    (A) the class members' interest in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in the managing a class action. *Id.* The superiority requirement is satisfied where:

> [t]he potential class members are both significant in number and geographically dispersed[, and t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions.

*Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001).

Here, the utility of the class action device is substantial. The Bond Class numbers in the thousands, but many of them have not been damaged to a degree that would induce them to bring their own suits or they may lack the resources to conduct litigation of such complexity. As "a

general rule, securities fraud cases 'easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursing individual litigation to seek recovery is often not feasible." *Monster*, 251 F.R.D. at 139 (quoting *Darquea v. Jarden Corp.*, No. 06 Civ. 72 (CLB), 2008 WL 622811, at *5 (S.D.N.Y. March 6, 2008)) (alterations in original).

In addition, the certification of the Bond Class for settlement purposes presents no trial management difficulties. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." 521 U.S. at 620.

## CONCLUSION

For all the foregoing reasons, Bond Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable and adequate and finally certify the Bond Class for purposes of the proposed Settlement.

Dated: New York, New York
   October 23, 2009

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**
 **& GROSSMANN LLP**


_____/s/ Max W. Berger_____
By: Max W. Berger
  Mark Lebovitch
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

***Bond Counsel***

# 410693.14