UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | Master File No. 07-cv-9633 (JSR)(DFE) |
| This Document Relates To: Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al., 08cv9063 (JSR)(DFE) | |

**MEMORANDUM OF LAW IN SUPPORT OF BOND COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES**

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
Max W. Berger
Mark Lebovitch
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 554-1400
Facsimile:   (212) 554-1444

*Bond Counsel*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 4

I.    PLAINTIFF'S COUNSEL ARE ENTITLED TO AN AWARD OF
      ATTORNEYS' FEES FROM THE COMMON FUND ........................................... 4

II.   THE COURT SHOULD AWARD A REASONABLE  PERCENTAGE OF THE
      COMMON FUND ................................................................................................... 6

III.  THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER
      EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE
      LODESTAR METHOD............................................................................................ 7

      A.    The Requested Attorneys' Fees Are Reasonable Under the Percentage
            Method ........................................................................................................... 7

      B.    The Requested Attorneys' Fees Are Reasonable Under The Lodestar
            Method ........................................................................................................... 9

IV.   OTHER FACTORS CONSIDERED BY COURTS IN THE SECOND CIRCUIT
      CONFIRM THAT THE REQUESTED 15% FEE IS FAIR AND REASONABLE ........ 10

      A.    The Time And Labor Expended By Counsel........................................... 11

      B.    The Risks Of The Litigation .................................................................... 12

      C.    The Magnitude And Complexity Of The Litigation ............................... 15

      D.    The Quality Of Representation ............................................................... 16

      E.    The Requested Fee In Relation To The Settlement ............................... 17

      F.    Public Policy Considerations .................................................................. 18

V.    BOND PLAINTIFFS' APPROVAL OF AND THE REACTION OF THE BOND
      CLASS TO THE FEE AND EXPENSE REQUEST FAVOR APPROVAL ................... 19

      A.    Bond Plaintiffs' Fee And Expense Decisions Are Presumptively
            Reasonable ................................................................................................. 19

      B.    The Bond Class's Reaction Is Overwhelmingly Positive ...................... 20

VI.    BOND COUNSEL RESPECTFULLY REQUESTS THAT THE COURT
       RECONSIDER ITS DECISION TO WITHHOLD PAYMENT OF
       ATTORNEYS' FEES UNTIL THE SETTLEMENT FUND IS ENTIRELY
       DISTRIBUTED ............................................................................................................21

VII.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
       NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ..................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988).................................................................................18

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)...............................................................................5, 18

*Blum v. Stenson*,
  465 U.S. 886 (1984).................................................................................7

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)...............................................................................4-5

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
  587 F. Supp. 2d 1266 (N.D. Ga. 2008).....................................................8

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)....................................................................12

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)............................................................. *passim*

*Hicks v. Morgan Stanley & Co.*,
  01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) ......................5, 6, 18

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  03-MDL-1529 (LMM), 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 Fed.
  Appx. 9 (2d Cir. 2008).............................................................................8

*In re Am. Bank Note Holographics Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001).................................................12, 14

*In re Am. Express Fin. Advisors Sec. Litig.*,
  No. 04 Civ. 1773 (DAB), Order and Final Judgment (S.D.N.Y. July 18, 2007)...................7

*In re AT&T Corp. Sec. Litig.*,
  455 F.3d 160 (3d Cir. 2006)..................................................................8, 23

*In re Biovail Corp. Sec. Litig.*,
  No. 03-CV-8917 (GEL), Order (S.D.N.Y. Aug. 8, 2008) .......................................7

*In re Bisys Sec. Litig.*,
   No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ......................6, 10, 16

*In re Bristol-Myers Squibb Sec. Litig.*,
   No. 00-1190 (SRC), Order (D.N.J. May 11, 2006), *aff'd*, No. 06-2964, 2007 WL
   2153284 (3d Cir. 2007)......................................................................................................9

*In re Brocade Sec. Litig.*,
   No. 05-CV-2042-CRB, Final Order and Judgment (N.D. Cal. Jan. 26, 2009).........................8

*In re Cendant Corp., Derivative Action Litig.*,
   232 F. Supp. 2d 327 (D.N.J. 2002) ....................................................................................9

*In re Charter Commc'ns, Inc. Sec. Litig.*,
   No. 02-CV-1186, 2005 WL 4045741, (E.D. Mo. June 30, 2005) .............................................9

*In re CMS Energy Sec. Litig.*,
   Case No. 02-CV-72004 (GCS), 2007 U.S. Dist. LEXIS 96786 (E.D. Mich. Sept. 6,
   2007) ..................................................................................................................................9

*In re Deutsche Telekom AG Sec. Litig.*,
   No. 00-CV-9475 (NRB), 2005 U.S. Dist. LEXIS 45798 (S.D.N.Y. June 9, 2005)...................8

*In re Doral Fin. Corp. Sec. Litig.*,
   No. 1:05-cv-4014-RO, Order (S.D.N.Y. July 17, 2007).........................................................8

*In re DPL, Inc. Sec. Litig.*,
   307 F. Supp. 2d 947 (S.D. Ohio 2004) ...................................................................................9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007).........................10, 24

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................6, 16, 17, 19, 20

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)..........................................................................................9

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003)................................................................................24

*In re Indep. Energy Holdings PLC Sec. Litig.,*
   Master File No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept.
   26, 2003) ............................................................................................................................14

*In re Informix Corp. Sec. Litig.*,
   No. 97-1289, 1999 U.S. Dist. LEXIS 23579 (N.D. Cal. Nov. 23, 1999) .................................9

*In re Lernout & Hauspie Sec. Litig.*,
138 F. Supp. 2d 39 (D. Mass. 2001) ...................................................................19

*In re Med. X-Ray Film Antitrust Litig.*,
No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)................................9

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*
246 F.R.D. 156 (S.D.N.Y. 2007) ................................................................. *passim*

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................16

*In re Microstrategy, Inc. Sec. Litig.*,
172 F. Supp. 2d 778 (E.D. Va. 2001) ...................................................................9

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................17, 23

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)..............................14

*In re Priceline.com, Inc. Sec. Litig.*,
No. 3:00-CV-1884 (AVC), 2007 WL 2115592 (D. Conn. July 20, 2007) ..............5

*In re Prudential Sec. Inc. Limited P'ships Litig.*,
912 F. Supp. 97 (S.D.N.Y. 1996)..........................................................................8

*In re Rite Aid Corp. Sec. Litig.*,
362 F. Supp. 2d 587 (E.D. Pa. 2005) ....................................................................9

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)..................................................................................8

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)......................................................................8

*In re Sunbeam Sec. Litig.*,
176 F. Supp. 2d 1323 (S.D. Fla. 2001) .................................................................9

*In re Synthroid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003) .............................................................................20

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)........................................................5, 12, 21

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ..............5, 16, 17, 21

*In re Visa Check/Mastermoney Antitrust Litig.*,
　　297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..........................................................................18, 23

*In re WorldCom, Inc. Sec. Litig.*,
　　388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................................7, 19

*Kurzweil v. Philip Morris Cos.*,
　　No. 94 Civ. 2373 (MBM), 1999 WL 1076105, (S.D.N.Y. Nov. 30, 1999)..............................8

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
　　No. 07 Civ. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)................................13

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
　　487 F.2d 161 (3d Cir. 1973)....................................................................................................9

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
　　540 F.2d 102 (3d Cir. 1976) (*en banc*) ...................................................................................9

*Maley v. Del Global Techs. Corp.*,
　　186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................ *passim*

*Missouri v. Jenkins*,
　　491 U.S. 274 (1989)................................................................................................................7

*Ressler v. Jacobson*,
　　149 F.R.D. 651 (M.D. Fla. 1992)...........................................................................................18

*Rombach v. Chang*,
　　355 F.3d 164 (2d Cir. 2004)...................................................................................................13

*Savoie v. Merchs. Bank*,
　　166 F.3d 456 (2d Cir. 1999)....................................................................................................6

*Schwartz v. TXU Corp.*,
　　No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ......................................9

*Teachers' Ret. Sys. v. A.C.L.N. Ltd.*,
　　No. 01-CV-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) .............................12, 16, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　　551 U.S. 308 (2007)...........................................................................................................5, 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
　　396 F.3d 96 (2d Cir. 2005)......................................................................................................6

STATUTES

15 U.S.C. § 77z-1(a)(6)....................................................................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ..................................................................................................13

Fed. R. Civ. P. 23(h) .................................................................................................1

H.R. Conf. Rep. No. 104-369 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731, 1995
    WL 709276 (1995)) ............................................................................................19

Court-appointed Bond Counsel, Bernstein Litowitz Berger & Grossmann LLP ("Bond Counsel"), having achieved a recovery of $150 million in cash (the "Settlement Amount") for the benefit of the Bond Class in this action, respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 23(h), for an award of attorneys' fees on behalf of Plaintiffs' Counsel[1] in the amount of 15% of Settlement Fund (*i.e.,* 15% of the Settlement Amount with interest on such amount at the same rate as earned by the Settlement Fund).[2] Bond Counsel also seeks reimbursement of $507,794.07 in litigation expenses incurred in prosecuting the Action.

## PRELIMINARY STATEMENT

The $150 million proposed Settlement of the Bond Action, which arises from Merrill's alleged misrepresentations regarding its subprime mortgage-linked derivative securities in public offering materials, represents an excellent result for the Bond Class. As further detailed herein and in the accompanying Bond Counsel Declaration, Bond Counsel prosecuted the Action on

---

[1] In addition to Bond Counsel, the application includes the firms of Saxena White P.A. and Pomerantz Haudek Grossman & Gross, LLP.

[2] Bond Plaintiffs are simultaneously submitting herewith the Declaration of Max W. Berger and Mark Lebovitch in Support of Bond Plaintiffs' Motion for Final Approval of Class Action Settlement and Certification of the Bond Class and Motion for Approval of Plan of Allocation of Settlement Proceeds, and Bond Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Bond Counsel Declaration" or "Bond Counsel Decl."). The Court is respectfully referred to the Bond Counsel Declaration for a detailed description of, *inter alia*: the history of the Action, the nature of the claims asserted; the negotiations leading to the Settlement; the value of the Settlement to the Class, as compared to the risks and uncertainties of continued litigation; and a description of the services Bond Counsel and other Plaintiffs' Counsel provided for the benefit of the Class. Unless otherwise noted, capitalized terms shall have the meanings set out in the Bond Counsel Declaration and in the Stipulation and Agreement of Settlement dated August 12, 2009 (the "Stipulation") attached as Exhibit 1 to the Bond Counsel Declaration.

behalf of the Bond Class on a purely contingent-fee basis and achieved this result in the face of numerous meaningful hurdles and risks.

Bond Plaintiffs and Bond Counsel determined that Bond Plaintiffs and thousands of other investors in Merrill Lynch & Co., Inc. ("Merrill") bonds and certain series of preferred stock had valuable claims that were not included in any pending class action complaint. Bond Counsel identified October 5, 2007 as an important disclosure date[3] and realized that certain Securities Act claims could become barred by the one-year statute of limitations. In order to preserve those claims for Bond Plaintiffs and the Bond Class, Bond Counsel marshaled the resources needed to investigate the claims and prepare the initial pleading, which was filed on October 3, 2008.

The case proceeded rapidly. In late 2008 and early 2009, Bond Plaintiffs had opportunities to settle the claims in the Bond Action concurrent with the settlement of the Merrill Lynch Consolidated Securities Action and ERISA Action. Bond Plaintiffs, advised by Bond Counsel, rejected several substantial proposals that they believed were inadequate, notwithstanding the significant risks they knew they would face in proceeding with the litigation. While Bond Counsel was preparing an amended complaint in February 2009, the Court expedited briefing of motions to dismiss based on the initial complaint. Bond Plaintiffs again had an opportunity to resolve the matter, but again insisted on achieving a better result for the Bond Class.

In late-February, after extensive briefing and two oral arguments, the Court dismissed the initial complaint. Bond Plaintiffs responded with a comprehensive Amended Bond Complaint

---

[3]    On October 5, 2007, Defendant Merrill disclosed that it would take a $4.5 billion loss on previously undisclosed CDOs held on its balance sheet and subprime exposures.

reflecting Bond Counsel's best effort to address the Court's stated concerns and satisfy any pleading requirement that Defendants could ask the Court to apply.

Defendants vigorously asserted that they had strong arguments that could defeat liability and that they could break the link of loss causation so that recoverable damages – even assuming all of the Bond Class Securities remained in the case – were a fraction of the amount that Bond Counsel's damage expert had calculated. Defendants also argued that, even if the pending motions to dismiss would not eliminate the case in its entirety, a dismissal of even a small number of the Bond Class Securities from the case would materially lower the amount of recoverable damages.

Following the filing of the Amended Bond Complaint, settlement discussions were renewed. The Settlement, which was conditioned on the satisfactory completion of due diligence discovery, was reached just a few days before the argument on the second round of motions to dismiss, reflects Bond Counsel's hard work and best judgment.[4] The $150 million (plus interest) obtained for the benefit of the Bond Class is substantially greater than the offers that had been rejected.[5]

Given the excellent recovery obtained for the benefit of the Bond Class, the status of the litigation, the complexity and amount of work involved, the skill and expertise required, and the other risks counsel undertook, Bond Counsel believes that the requested award of 15% of the

---

[4]   Bond Plaintiffs did not enter into a formal stipulation of settlement until due diligence discovery was substantially complete.

[5]   As further detailed at paragraphs 15 to 16 of the Declaration of Chad Coffman submitted herewith, the $150 million Settlement Amount represents a recovery of about 16% of the total recoverable damages that Bond Plaintiffs expected to be able to present to a jury, assuming all ten of the Bond Class Securities remained in the case through dismissal and summary judgment motions. The percentage of recovery compared with total recoverable losses rises materially if even one or two of the Bond Class Securities were eliminated from the case before trial.

Settlement Fund (*i.e.*, $22.5 million) and reimbursement of counsel's expenses in the amount of $507,794.07, is fair and reasonable. Federal courts in this District and throughout the nation have awarded substantially greater fees and expense reimbursement in complex securities class actions such as this. Additionally, the requested fee is based on retainer agreements negotiated by Bond Plaintiffs at the inception of the Action and reassessed and approved by Bond Plaintiffs after the Settlement was achieved.[6]

Finally, although Notices have been mailed to more than 100,000 potential Bond Class Members stating that Lead Counsel would seek fees up to 15% of the Settlement Fund and reimbursement of counsel's expenses in an amount not to exceed $750,000,[7] to date, not a single objection to the fee request has been received.[8]

## ARGUMENT

I.  **PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND**

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable

---

[6]  *See* Joint Declaration of Randall Roche, General Counsel of Louisiana Municipal Police Employees' Retirement System, and Osey McGee, Jr., Director of Louisiana Sheriffs' Pension and Relief Fund, in Support of Bond Plaintiffs' Motion for Final Approval of Class Action Settlement and Certification of the Bond Class and Motion for Approval of Plan of Allocation of Settlement Proceeds, and Bond Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Bond Plaintiffs' Declaration" or "Bond Plaintiffs' Decl."), Bond Counsel Decl. Ex. 5, at ¶¶ 7, 13.

[7]  *See* Affidavit of Richard W. Simmons of Analytics, Inc. Re: (A) Mailing of the Notice and the Claim Form; (B) Publication of Notice; and (C) Report on Exclusion Requests Received (the "Simmons Affidavit" or "Simmons Aff."), Bond Counsel Decl. Ex. 2, at ¶ 15, and Exhibit A thereto at ¶¶ 4, 71.

[8]  The deadline for the submission of objections is November 9, 2009. Should any objections be received, they will be addressed by Bond Counsel in reply papers (the "Supplemental Submission").

attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).[9]  Indeed, courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore to discourage future alleged misconduct of a similar nature.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *see Veeco*, 2007 WL 4115808, at *2 (same).[10]

Indeed, the Supreme Court has emphasized that private securities actions, such as the instant Action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission.")  Compensating plaintiff's counsel for their risk-taking is essential, since "[s]uch actions could not

---

[9]   *See also In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007); *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (Second Circuit "recognizes that class counsel who create a settlement fund for the benefit of a class are entitled to be compensated for their services from that settlement fund").

[10]   *See also In re Merrill Lynch & Co. Research Reports Sec. Litig.* ("*ML Tech*"), 246 F.R.D. 156, 175 (S.D.N.Y. 2007); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884 (AVC), 2007 WL 2115592, at *5 (D. Conn. July 20, 2007) ("The fee fairly compensates competent counsel in a complex securities case and helps to perpetuate the availability of skilled counsel for future cases of this nature."); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (citation omitted).

be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks*, 2005 WL 2757792, at *9.

## II.     THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND

Bond Counsel respectfully submits that this Court should award a fee based on a percentage of the cash common fund obtained for the Bond Class.  The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources."  *See Goldberger*, 209 F.3d at 48-50 (holding that either the percentage of fund method or lodestar method may be used to determine appropriate attorneys' fees); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases").  Indeed, the Second Circuit more recently noted that district courts in the Circuit award fees according to the percentage method because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (citation omitted); *see ML Tech*, 246 F.R.D. at 171; *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *2 (S.D.N.Y. July 16, 2007) (Rakoff, J.); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004).

The PSLRA also supports awarding attorneys' fees using the percentage-of-the-fund method in securities law cases, stating that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a *reasonable percentage* of the amount" recovered for the class. 15 U.S.C. § 77z-1(a)(6) (emphasis added).   Several courts have concluded that, in using this language, Congress expressed a preference for the percentage

method, as opposed to the lodestar method, when determining attorneys' fees in securities class actions. *See ML Tech*, 246 F.R.D. at 171; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005); *Maley*, 186 F. Supp. 2d at 370.

## III. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD

### A. The Requested Attorneys' Fees Are Reasonable Under The Percentage Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *Blum v. Stenson*, 465 U.S. 886, 903 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

The compensation requested here was negotiated with and is endorsed by Bond Plaintiffs. *See* Bond Counsel Decl. Ex. 5, Bond Plaintiffs' Decl. at ¶¶ 7, 13. At 15%, the fee is well within, if not at the lower end of, the range of percentage fees awarded in the Second Circuit and in other jurisdictions for recoveries of this magnitude. In securities class actions where the amount recovered by the class is in the range of $100 to $200 million, Courts in this District have awarded fees ranging from 15% to 30% of the settlement fund, with awards between 20% to 30% being common. *See, e.g., In re Biovail Corp. Sec. Litig.*, No. 03-CV-8917 (GEL), Order at 2-3 (S.D.N.Y. Aug. 8, 2008) (awarding 16% of $138 million settlement fund) (attached hereto as Exhibit A); *ML Tech*, 246 F.R.D. at 178 (awarding 24% of $133 million settlement fund); *In re Am. Express Fin. Advisors Sec. Litig.*, No. 04 Civ. 1773 (DAB), Order and Final Judgment at 8

(S.D.N.Y. July 18, 2007) (awarding 27% of $100 million settlement fund) (attached hereto as Exhibit B); *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-cv-4014-RO, Order at 3, 5 (S.D.N.Y. July 17, 2007) and Settlement Brief at 1 (July 9, 2007) (awarding 15.25% of $129 million settlement fund pursuant to a negotiated fee agreement and noting that this percentage "is below the range normally awarded in cases of this nature") (attached hereto as Exhibit C); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 03-MDL-1529 (LMM), 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) (awarding 21.4% of $455 million settlement fund), *aff'd*, 272 Fed. Appx. 9 (2d Cir. 2008); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-9475 (NRB), 2005 U.S. Dist. LEXIS 45798, at *12-*13 (S.D.N.Y. June 9, 2005) (awarding 28% of $120 million settlement fund); *Kurzweil v. Philip Morris Cos.*, No. 94 Civ. 2373 (MBM), 1999 WL 1076105, at *1 (S.D.N.Y. Nov. 30, 1999) (awarding 30% of $123.8 million settlement fund); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 400 (S.D.N.Y. 1999) (awarding 27.5% of $116.6 million settlement fund); *In re Prudential Sec. Inc. Limited P'ships Litig.*, 912 F. Supp. 97, 103-04 (S.D.N.Y. 1996) (awarding 27% of $110 million settlement fund).  An examination of fee decisions in securities class actions with settlements between $100 and $200 million in other federal jurisdictions also shows that an award of 15% is on the low end of the range of awards. For example, in *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298 (3d Cir. 2005), the Third Circuit noted the District Court's reliance on an expert declaration of Professor John C. Coffee, which found that "percentage recoveries between 25% to 30% were 'fairly standard' in . . . class actions involving settlements between $100 and $200 million."[11]

---

[11]  *See also, e.g., In re AT&T Corp. Sec. Litig.*, 455 F.3d 160 (3d Cir. 2006) (affirming award of 21.25% of $100 million settlement fund); *In re Brocade Sec. Litig.*, No. 05-CV-2042-CRB, Final Order and Judgment at 13 (N.D. Cal. Jan. 26, 2009) (awarding 25% of $160 million settlement fund) (attached hereto as Exhibit D); *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587

**B.**    **The Requested Attorneys' Fees Are Reasonable Under The Lodestar Method**

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to cross-check the proposed award against counsel's lodestar.  *Goldberger*, 209 F.3d at 50.[12]  In cases of this nature, fees representing multiples above the lodestar are regularly awarded to reflect the contingency fee risk and other relevant factors.  Courts find that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."  *In re Cendant Corp., Derivative*

---

F. Supp. 2d 1266, 1275 (N.D. Ga. 2008) (awarding 21% of $137.5 million settlement fund); *In re CMS Energy Sec. Litig.*, No. 02-CV-72004 (GCS), 2007 U.S. Dist. LEXIS 96786, at *14-*15 (E.D. Mich. Sept. 6, 2007) (awarding 22.5% of $200 million settlement fund); *In re Bristol-Myers Squibb Sec. Litig.*, No. 00-1190 (SRC), Order at 2 (D.N.J. May 11, 2006) (awarding 19.77% of $185 million settlement fund) (attached hereto as Exhibit E), *aff'd*, No. 06-2964, 2007 WL 2153284 (3d Cir. 2007) (unpublished opinion); *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *24, *34 (N.D. Tex. Nov. 8, 2005) (awarding 22.2% of $149.75 million settlement fund); *In re Charter Commc'ns, Inc. Sec. Litig.*, No. 02-CV-1186, 2005 WL 4045741, at *12-*14, *18 (E.D. Mo. June 30, 2005) (awarding 20% of $146.25 million settlement fund); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 590-91 (E.D. Pa. 2005) (awarding 25% of $126.6 million settlement fund);  *In re DPL, Inc. Sec. Litig.*, 307 F. Supp. 2d 947, 954-55 (S.D. Ohio 2004) (awarding 20% of $110 million settlement fund); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1337 (S.D. Fla. 2001) (awarding 25% of $110 million settlement fund); *In re Microstrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 789-90 (E.D. Va. 2001) (awarding 18% of $153.5 million combined settlements funds); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (awarding 28.4% of $111 million settlement fund); *In re Informix Corp. Sec. Litig.*, No. 97-1289, 1999 U.S. Dist. LEXIS 23579, at *6 (N.D. Cal. Nov. 23, 1999) (awarding 30% of $132 million settlement fund).

[12]   Under the lodestar method, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorney's work.  *See, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973), *subsequently refined in Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*).  Courts are encouraged to award a multiplier because calculation of the lodestar is "simply the beginning of the analysis"  *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (quoting *In re Warner Communc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986)).

*Action Litig.*, 232 F. Supp. 2d 327, 341-42 (D.N.J. 2002).  *See, e.g., In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *17 (S.D.N.Y. July 27, 2007) ("lodestar multiplier of 2.48 is justified here, and is within range found to be reasonable by courts"); *Bisys*, 2007 WL 2049726, at *3 (awarding fee with lodestar multiplier of 2.99 and observing that it "falls well within the parameters set in this district and elsewhere"). The lodestar "cross check" here more than fully supports the requested percentage fee.

Here, the total lodestar of Plaintiffs' Counsel, derived by multiplying their hours by each firm's current hourly rates for attorneys and paraprofessionals, amounts to approximately $9,757,000, such that the requested 15% fee, which amounts to $22,500,000 (without interest), represents about 2.3 times Plaintiffs' Counsel's lodestar amount.  *See* Bond Counsel Decl. ¶¶ 97-98.  Thus, the 15% fee requested is well within the range of fees routinely awarded.

In sum, the attorneys' fees requested by Bond Counsel are well within the range of what courts in this Circuit and throughout the country commonly award in complex class actions such as this one.  The requested 15% fee is, therefore, reasonable and fair, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar, and warrants the Court's full approval.

## IV.  OTHER FACTORS CONSIDERED BY COURTS IN THE SECOND CIRCUIT CONFIRM THAT THE REQUESTED 15% FEE IS FAIR AND REASONABLE

The Second Circuit has set forth the following criteria that courts should consider when undertaking an analysis of a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (internal quotes and citation omitted).  Consideration of these factors, together with the analyses above, demonstrates that the negotiated fee requested by Bond

Counsel is reasonable.

### A.    The Time And Labor Expended By Counsel

Plaintiffs' Counsel expended substantial time and effort prosecuting this Action, which included, among other things, a thorough investigation of the factual and legal issues raised in the Amended Bond Complaint, including: (a) interviewing 87 former Merrill employees at all levels of the Company; (b) retaining and consulting with derivative securities originators, underwriters and analysts, and other experts in the pricing of CDOs and structured finance, as well as forensic accounting and damages experts; (c) researching the subprime mortgage market, including CDOs and monoline insurance practices in particular; and (d) reviewing publicly available information concerning Merrill, including statements made by the Company in registration statements and prospectuses and in other regulatory filings, press releases, conference calls, news articles, and analysts' reports. *See* Bond Counsel Decl. ¶ 29. Bond Counsel also spent substantial time and effort preparing the original complaint and Amended Bond Complaint, and responding to Defendants' original and renewed motions to dismiss. *Id*. at ¶¶ 13-14, 16, 20-25, 29-30. By the time the Settlement was reached, Plaintiffs' Counsel had completed a significant amount of work in vigorously prosecuting the litigation. Moreover, in connection with due diligence discovery undertaken to assess the reasonableness of the Settlement, Bond Counsel assembled a team of dozens of attorneys at its firm and other Plaintiffs' Counsel's firms to review the documents produced by Merrill. *Id*. at ¶ 66.

The significant amount of time and effort devoted to this case by Plaintiffs' Counsel, the efficient and effective management of the litigation and the propriety of the rates underlying their lodestar, all confirm that the fee request here is reasonable.

B.    **The Risks Of The Litigation**

The risk of the litigation is often considered the most important *Goldberger* factor. *See Goldberger*, 209 F.3d at 54; *Telik*, 576 F. Supp. 2d at 592 ("'the risk of the litigation' is a pivotal factor in assessing the appropriate attorneys' fees"). The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted), *abrogated on other grounds by Goldberger*, 209 F.3d 43. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. v. A.C.L.N. Ltd.,* No. 01-CV-11814, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *see also In re Am. Bank Note Holographics Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award").

While Bond Plaintiffs remained confident in their ability to prove their case and to effectively rebut Defendants' arguments, they recognized that their ability to do so was far from certain. If Defendants were to prevail, the Bond Class (and therefore Plaintiffs' Counsel) would receive nothing. As discussed in the Bond Counsel Declaration, this case was fraught with risk, making it far from certain that a recovery, let alone a settlement of $150 million in cash, would ultimately be obtained for the Bond Class. For example, notwithstanding that the claims asserted arose under the Securities Act, there was a very real risk that the Court would apply the

heightened pleading standard of Rule 9(b) if the complaint were deemed to "sound in fraud." [13] Indeed, this Court dismissed the initial complaint for failure to satisfy Rule 9(b). Bond Counsel Decl. ¶ 28. Despite Bond Plaintiffs' efforts to draft the Amended Bond Complaint so as to avoid even the slightest "imputation" of fraud and, in all events to detail the "who, what, where, when, how and why" of the alleged misrepresentations, Bond Plaintiffs continued to face a risk that the Court could again assess the sufficiency of Bond Plaintiffs' complaint under Rule 9(b) and determine that certain allegations were insufficiently particularized. *Id*. at ¶ 54.

Bond Plaintiffs also faced the very real risks that Defendants would have been able to establish that (i) they did not have a duty to disclose the allegedly wrongfully withheld information (Bond Counsel Decl. ¶¶ 42, 44); (ii) the disclosures made would have been found to be adequate (*id*. at ¶ 43); (iii) contrary to Bond Plaintiffs' assertions of falsity, the disclosures regarding the value of Merrill's CDO's were not actionable because they were accurate at the time they were made (*id*. at ¶ 45); (iv) Merrill's valuations of CDOs were mere statements of opinion and thus non-actionable (*id* at ¶ 46); (v) Bond Plaintiffs were relying on inappropriate and irrelevant indices for purposes of calculating the value of Merrill's CDOs (*id*. at ¶ 48); (vi) Bond Plaintiffs lacked standing to pursue claims with respect to certain of the Offerings which would thereby significantly reduce the potentially recoverable damages (*id*. at ¶ 49); and (vii) Defendants would have been able to convince a jury in the "battle of experts" that would have occurred, that the vast majority, if not all the losses suffered, were caused by factors other than

---

[13] *See, e.g., Rombach v. Chang*, 355 F.3d 164, 171-72 (2d Cir. 2004) (affirming dismissal of action with prejudice where Section 11 claims sounded in fraud and were not pled with sufficient particularity); *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976 (LAP), 2008 WL 4449280, at *11-*18 (S.D.N.Y. Sept. 30, 2008) (finding that Section 11 and 12(a)(2) claims sounded in fraud and dismissing complaint with prejudice under Rule 9(b)).

the allegedly misrepresented information, given the "global financial meltdown" that occurred during the relevant period (*id*. at ¶ 51).

Most important, Bond Plaintiffs recognized, through their extensive work with their damages expert, that even if the Court had merely dismissed one or two of the early 2007 Offerings or the last few Offerings from the Action, their ability to get $150 million for the Bond Class, even after a full trial and years of appeals, could be substantially impaired. *Id.* at ¶¶ 42-43. Even if liability were established, the risk of it turning into a pyrrhic victory by a finding of little or no recoverable damages was very real. In settlement discussions, Defendants aggressively articulated their ability to meet their burden in establishing "negative causation" in order to reduce, if not eliminate, recoverable damages on any of the Bond Class Securities that survived motions to dismiss and summary judgment. Additionally, as noted, proving damages would come down to "a battle of the experts," and it is impossible to predict which expert and theory of damages the jury would accept. *See Am. Bank Note Holographics*, 127 F. Supp. 2d at 426-27 ("[i]n such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses"); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y.) ("damages are a matter for the jury, whose determinations can never be predicted with certainty"), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also In re Indep. Energy Holdings PLC Sec. Litig.,* Master File No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11-12 (S.D.N.Y. Sept. 26, 2003) (noting difficulty of proving damages in securities cases).

These specific risks are in addition to those present in substantially all securities class actions, including the risk that: (i) the Court could have granted summary judgment in Defendants' favor; (ii) an adverse judgment could have been entered against Bond Plaintiffs

following trial, or judgment as a matter of law could have been entered for Defendants after the Bond Class' case-in-chief was presented; and (iii) even if Bond Plaintiffs succeeded at trial, judgment may have been overturned on appeal.

Moreover, Bond Counsel had opportunities to settle the Action in late 2008 and early 2009, as well as before the first round of oral arguments on Defendants' motions to dismiss. Bond Counsel Decl. ¶¶ 17-18, 57-59. These opportunities emerged before Bank of America's acquisition of Merrill closed, when a Merrill bankruptcy remained a distinct possibility. Each time, Bond Counsel (together with Bond Plaintiffs) was willing to bear the risk of receiving nothing in the future because they followed their conviction that the Action warranted a more significant payment to the Bond Class. Accordingly, Bond Counsel's determination in obtaining $150 million for the Bond Class immediately represents a significant achievement that strongly supports the requested award of attorneys' fees.

### C. The Magnitude And Complexity Of The Litigation

Securities class actions are notoriously complex. *See ML Tech*, 246 F.R.D. at 172 ("Securities class litigation is notably difficult and notoriously uncertain.") (internal quotation marks omitted). As noted above and in the Bond Counsel Declaration, the litigation was hard fought. Defendants' multiple arguments on their motions to dismiss first the Initial Complaint and then the Amended Bond Complaint were indicative of the vigorous defense they would continue to mount throughout the course of the litigation. Additionally, the volume of documents produced for Bond Plaintiffs' due diligence review (*see* Bond Counsel Decl. ¶ 66), is a clear indicator of the magnitude of the litigation. If the Action had not been settled, there would have been additional document discovery; numerous depositions; and, given the complex, specialized and technical factual issues across multiple disciplines (*e.g.*, finance, accounting and

damages), extensive expert discovery. Accordingly, the magnitude and complexity of this securities class action supports the conclusion that the requested fee is reasonable and fair.

### D.    The Quality Of Representation

The quality of the representation by Bond Counsel and other Plaintiffs' Counsel is another important factor that supports the reasonableness of the requested fee. The quality of Plaintiffs' Counsel's representation is best evidenced by the quality of the result achieved. *See Goldberger*, 209 F.3d at 55; *Veeco*, 2007 WL 4115808, at *7; *Bisys*, 2007 WL 2049726, at *3; *Global Crossing*, 225 F.R.D. at 467. Bond Counsel respectfully submits that its experience and commitment to the litigation allowed it to negotiate this significant Settlement. *See Teachers' Ret. Sys.,* 2004 WL 1087261, at *6 (noting that skill and prior experience of counsel in specialized field of shareholder securities litigation is relevant in determining fair compensation).

From the very beginning, Bond Counsel litigated this case vigorously in order to obtain the maximum recovery for the Bond Class. Bond Counsel's determined effort in moving this litigation forward is ultimately reflected in the outcome. Plaintiffs' Counsel submit that they more than ably responded, on an expedited schedule, to five sets of motions to dismiss, and filed an Amended Bond Complaint that cogently alleged the basis for liability on the Offerings. Moreover, Bond Counsel's advice to Bond Plaintiffs that early settlement offers should be rejected as inadequate (*see* Bond Counsel Decl. ¶¶ 18, 59) demonstrated its willingness to continue to litigate rather than accept a settlement that they believed did not reflect the full value of the underlying claims for the Bond Class.

Courts have repeatedly recognized that the quality of the opposition faced by plaintiffs' counsel should also be taken into consideration in assessing the quality of the plaintiffs' counsel's performance. *See In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141

(S.D.N.Y. 2008); *Global Crossing*, 225 F.R.D. at 467.[14]   Indeed, because of the number of defendants (and the fact that many of the key Merrill executives had left the Company and retained their own lawyers), Defendants were collectively represented by a "who's who" of the most respected and capable securities defense attorneys' in the nation. *See* Bond Counsel Decl. ¶ 100.   Indeed, Defendants, through their counsel, zealously fought Bond Plaintiffs' claims at every turn.   Defendants' counsel moved to dismiss the Initial Complaint and were successful; they then moved to dismiss the Amended Bond Complaint and were fully prepared to continue to litigate rather than settle for what they or their clients felt was an unreasonably high amount. Notwithstanding this formidable opposition, Bond Counsel's ability to present a strong case and to demonstrate its willingness to continue to vigorously prosecute the Action enabled it to achieve a very favorable settlement for the benefit of the Bond Class.

### E.    The Requested Fee In Relation To The Settlement

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery.   As discussed in detail in Point III above, courts in the Second Circuit and around the country have consistently awarded percentage fees to plaintiffs' counsel that are greater than the negotiated fee requested here by Bond Counsel. Thus, the present request for a fee award of 15% of the Settlement Fund is reasonable in relation to the fees typically awarded in complex class actions.

---

[14]   *See, e.g., Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *Teachers' Ret. Sys.*, 2004 WL 1087261, at *7 ("The quality of opposing counsel is also relevant in evaluating the quality of services rendered by Plaintiffs' Counsel."); *Maley*, 186 F. Supp. 2d at 373 (noting that one factor supporting a 33 1/3% fee award was that defendants were represented by five law firms, including several "nationally prominent" firms); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998) ("The quality of opposing counsel is also significant in considering the quality of services rendered by plaintiffs' counsel, as measured by the result achieved.").

## F.    Public Policy Considerations

A strong public policy concern exists for rewarding firms for bringing successful securities litigation.  *See Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *ML Tech*, 246 F.R.D. at 175 ("Public policy concerns favor the award of reasonable attorneys' fees in class action litigation."); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988) (the federal securities laws are remedial in nature, and the courts must encourage private lawsuits to effectuate their purpose of protecting investors).  The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman*, 472 U.S. at 310 (citation omitted); *see also Tellabs*, 551 U.S. at 313.  In addition, the typical class representative is unlikely to be able to pursue long and protracted litigation at his, her, or its own expense.  Thus, "public policy favors the granting of [attorneys'] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions."  *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992).  Public policy favors granting Bond Counsel's fee and expense application here.[15]

---

[15]  *See also Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) (citing *Goldberger*, 209 F.3d at 51) ("There is … commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.").

V.    **BOND PLAINTIFFS' APPROVAL OF AND THE REACTION OF THE BOND CLASS TO THE FEE AND EXPENSE REQUEST FAVOR APPROVAL**

A.    **Bond Plaintiffs' Fee And Expense Decisions Are Presumptively Reasonable**

In enacting the PSLRA, Congress sought to encourage sophisticated institutional investors to play an active role in prosecuting securities cases.  *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 43 (D. Mass. 2001) (citing H.R. Conf. Rep. No. 104-369, at 32 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731, 1995 WL 709276 (1995)).  Congress believed that increasing the role of institutional investors would "ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep. No. 104-369, at 34.  Sophisticated investors with large financial stakes in litigation provide independent assurance that class counsel seek reasonable fees.  *See WorldCom,* 388 F. Supp. 2d at 356 ("The establishment of criteria for the appointment of a lead plaintiff capable of exercising a significant supervisory role in the litigation, including management of the fees and costs, was an important innovation of the PSLRA.") (citation omitted).

Accordingly, a fee arrangement negotiated between a sophisticated and fully informed PSLRA lead plaintiff and their counsel should be presumptively reasonable.  *See Global Crossing*, 225 F.R.D. at 466 ("in class action cases under the PSLRA, courts presume fee requests submitted pursuant to a retainer agreement negotiated at arm's length . . . are reasonable"); *WorldCom,* 388 F. Supp. 2d at 356 ("when class counsel in a securities lawsuit have negotiated an arm's-length agreement with a sophisticated lead plaintiff possessing a large stake in the litigation, and when that lead plaintiff endorses the application following close supervision of the litigation, the court should give the terms of that agreement great weight."). As the court in *Global Crossing* explained:

> In cases subject to the PSLRA, the lawyers representing a class are not mere entrepreneurs acting on behalf of purely nominal plaintiffs, but are lawyers

> selected by court-appointed Lead Plaintiffs who are substantial and sophisticated institutional investors with access to independent legal and financial specialists and a huge stake in the litigation. These various entities and counsel participated in negotiating the settlement, carefully reviewed the Agreement, and have advised the Court that the proposal fairly represents their interests.

225 F.R.D. at 462. The presumption of reasonableness ensures "that the lead plaintiff, not the court, functions as the class's primary agent vis-a-vis its lawyers." *Global Crossing*, 225 F.R.D. at 466 (citation and internal quotes omitted); *see also In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003).

In this case, Bond Plaintiffs entered into negotiated retainer agreements with Bond Counsel that established a sliding scale for fee awards that depended on the stage of the litigation at which the Action was resolved. Bond Counsel Decl. ¶ 94. Under the terms of this agreement, Bond Counsel agreed to apply for an award of 15% of the recovery if the recovery was obtained before a decision on the motion to dismiss and to apply for a fee award of 20% of the recovery if it was obtained after the commencement of fact discovery. *See* Bond Counsel Decl. Ex. 5, Bond Plaintiffs' Decl. ¶ 7. Bond Counsel and Bond Plaintiffs agreed after the Settlement was achieved that Bond Counsel would seek the lesser amount despite having engaged in extensive due diligence discovery. Bond Counsel's application for a 15% fee award has been specifically endorsed by Bond Plaintiffs, which were involved in every stage of the litigation and, thus, made an informed determination. *Id.* at ¶ 13.

### B.    The Bond Class's Reaction Is Overwhelmingly Positive

As of October 16, 2009, the Claims Administrator has disseminated the Notice to more than 100,000 potential Bond Class Members informing them, *inter alia,* that Bond Counsel intended to apply to the Court for an award of attorneys' fees up to 15% of the Settlement Fund and up to $750,000 in expenses. Bond Counsel Decl. ¶¶ 96, 114. While the time to object to the fee and expenses application does not expire until November 9, 2009, to date not a single

objection has been received. Should any objections be received, Bond Counsel will address them in reply papers. If any objections are received, Bond Counsel will so advise the Court. A class's overwhelmingly positive reaction to a fee request is powerful evidence that the requested fee is fair and reasonable. *See Telik*, 576 F. Supp. 2d at 594; *Veeco*, 2007 WL 4115808, at *10.

## VI.    BOND COUNSEL RESPECTFULLY REQUESTS THAT THE COURT RECONSIDER ITS DECISION TO WITHHOLD PAYMENT OF ATTORNEYS' FEES UNTIL THE SETTLEMENT FUND IS ENTIRELY DISTRIBUTED

In the Preliminary Approval Order, the Court stated that "no attorneys' fees shall be paid or distributed until after all other authorized distributions of funds have occurred." Preliminary Approval Order ¶ 29. Bond Counsel respectfully requests that the Court reconsider this ruling and permit payment of any Court-awarded attorneys' fees as provided for in the Stipulation and Agreement of Settlement.

Bond Counsel infers that the Court's concern is its interest in ensuring that settlement proceeds are distributed to class members as expeditiously as possible. Bond Counsel shares that concern. As set forth in the Bond Counsel Declaration, Bond Counsel has been prosecuting securities class actions for over twenty-six (26) years and has made it a firm policy to remain deeply involved in the administration of its settlements even after receiving its fee. Its lawyers regularly devote hundreds of hours to the administration of settlements for which no additional compensation is sought. Bond Counsel Decl. ¶ 108. Bond Counsel has and will continue to work with the Claims Administrator to assure that distribution to Authorized Claimants occurs as expeditiously as possible. *See id.* at ¶ 87.

Notwithstanding the efforts and continuing involvement of Bond Counsel, however, there are limitations, many of which are beyond its control, that impact the date by which the proceeds of the Settlement can be fully distributed. Thus, for example, after the Claims are processed, Claimants whose Claims are found to be deficient or which will be recommended for rejection

must be given an opportunity to cure the deficiency or request Court review of the administrative determination to reject the Claim. Often a deficient Claim will not be cured and, thus, a notice of rejection must also be sent. *See* Bond Counsel Decl. ¶ 88. The time involved in the deficiency/rejection notice process is an issue that Bond Counsel specifically addressed with the Claims Administrator in reviewing their procedures to assure that Claims would be processed as expeditiously as possible. Bond Counsel obtained assurance that these notifications will be sent on a rolling basis as Claims are processed. However, given that a very large percentage of claims historically are filed at or near the deadline, regardless of how quickly the Claims are processed, the need to provide an opportunity to cure adds more than 40 days after completion of claims processing before final audit procedures can be undertaken and a motion for authorization to make an initial distribution can be made. *See id*. at ¶ 88 & n.11.

Additionally, once the initial distribution is made, Claimants must be given a reasonable opportunity to cash their checks, which Bond Counsel believes should not be less than ninety (90) to one-hundred-twenty (120) days from the date of issuance. *Id*. at ¶ 90. Once all checks become stale-dated (which regularly extends beyond the initial void date because of the need to replace or reissue checks), Bond Counsel and the Claims Administrator will confer to determine if, in their opinion, it was now appropriate to seek a ruling from the Court that any checks that had not been cashed shall be deemed forfeited. Based on the amount remaining in the Net Settlement Fund, Bond Counsel and the Claims Administrator will determine if it is economically practical to make a second distribution. *Id*. Thus, notwithstanding Bond Counsel's and the Claims Administrator's commitment to have an initial distribution of the settlement proceeds as expeditiously as possible, it can easily be a year or more after the Claim filing deadline before the entirety of the Net Settlement Fund can be distributed. *Id*. at ¶ 91.

While withholding the entirety of any fee award is, therefore, not likely to result in the Settlement funds being distributed to Bond Class Members any sooner than would be the case under Bond Counsel's existing practices with respect to claims administration, withholding any fee award for an extended period of time will impose real burdens on Bond Counsel. Specifically, Bond Counsel relies almost exclusively on contingent fees to operate its firm, which in turn can put severe strains on cash flow. *Id*. at ¶ 112. When an action is commenced there is no way of knowing how long it will take to resolve or even if there will be a successful resolution. Bond Counsel accepts that risk and has repeatedly demonstrated that it is willing to defer, and even jeopardize, the possibility of obtaining any fees, by taking cases to trial if necessary in order to achieve the best possible outcome for the class. However, once a settlement is achieved in one case and Bond Counsel focuses on preparing another for trial, Bond Counsel relies, as it must, on being able to predict within a reasonable range, the time when payment of attorneys' fees will occur. Bond Counsel submits that all the public policy reasons cited above in general support of the award of attorneys' fees in securities class actions, also support the prompt payment of these fees.[16]

---

[16]    Attorneys' fees in securities class actions and other common fund cases are routinely disbursed to class counsel at the time of settlement. *See NASDAQ Market-Makers*, 187 F.R.D. at 479-80 ("Numerous courts have directed that the entire fee award be disbursed immediately upon entry of the award, or within a few days thereafter.") Courts that have focused on the issue have found no fault in this practice, especially where, as here, the settlement has been fully funded in escrow before the attorneys' fees are paid. *See AT&T*, 455 F.3d at 174 (rejecting objectors' argument that "a portion of the attorneys' fees should be withheld pending payment of claims to class members" because the settlement amount was fixed); *Visa Check/Mastermoney,* 297 F. Supp. 2d at 519-520 (rejecting objectors' argument that plan to securitize settlement was unfair because "Class Counsel will unfairly receive their fees first"); *NASDAQ Market-Makers*, 187 F.R.D. at 480 ("No reasoning has been advanced to justify withholding . . . fee award at the time of settlement approval").

Based on the foregoing, Bond Counsel respectfully requests that the Court reconsider its addition to the Preliminary Approval Order but, if still not inclined to authorize payment pursuant to the terms of the Stipulation, asks the Court to modify the provision such that only a reasonable percentage of any fee awarded be withheld until the time of the initial distribution.

## VII.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Bond Counsel's fee application includes reimbursement for counsel expenses that were reasonably incurred and necessary to the prosecution of this Action.  *See* Bond Counsel Decl. ¶¶ 115-125.  These expenses are properly recovered by counsel.  *See EVCI*, 2007 WL 2230177, at *18 (approving class counsel's expenses "that were essential to the successful prosecution and resolution of [the] Action"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (the court may compensate class counsel for reasonable out-of-pocket expenses necessary to the representation of the class).  As set forth in detail in the Bond Counsel Declaration, Plaintiffs' Counsel incurred $507,794.07 in litigation expenses on behalf of the Bond Class in the prosecution of the Action.  Bond Counsel Decl. ¶ 115.  No one has objected to the expense request.  Reimbursement of these expenses is fair and reasonable.  The expenses for which Bond Counsel seeks reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses include, among others, expert fees, computerized research, long distance telephone and facsimile charges, postage and delivery expenses, overtime expenses, filing fees, photocopying, and document management.  Bond Counsel also seeks reimbursement for out-of-town travel expenses, which are also the type of expense that is necessarily incurred in litigation and routinely charged to clients billed by the hour.  The foregoing expense items were billed separately by Plaintiffs' Counsel, and such charges are not duplicated in the respective firms' billing rates.

**CONCLUSION**

Based on the foregoing and the entire record herein, Bond Counsel respectfully requests that the Court award attorneys' fees of 15% of the Settlement Fund and $507,794.07 in reimbursement of counsel's reasonable expenses incurred in connection with the prosecution of this Action

Dated:  New York, New York              Respectfully submitted,
        October 23, 2009

                                        **BERNSTEIN LITOWITZ BERGER
                                        & GROSSMANN LLP**


                                        _____/s/ Max W. Berger_____
                                        By:   Max W. Berger
                                              Mark Lebovitch
                                        1285 Avenue of the Americas
                                        New York, New York  10019
                                        Tel:  (212) 554-1400
                                        Fax:  (212) 554-1444

                                        *Bond Counsel*

# 410723.12