UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE MERRILL LYNCH & CO., INC.
SECURITIES, DERIVATIVE AND ERISA
LITIGATION

This Document Relates To:
Louisiana Sheriffs' Pension and Relief Fund, et al.
v. Conway, et al., 08cv9063 (JSR)(DFE)

Master File No. 07-cv-9633 (JSR)(DFE)

---

**SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT
OF (1) BOND PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF THE BOND CLASS; (2) MOTION
FOR APPROVAL OF PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS;
AND (3) BOND COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES**

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
Max W. Berger
Mark Lebovitch
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Bond Counsel*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

I.     PRELIMINARY STATEMENT ................................................................... 1

II.    THE BOND CLASS'S REACTION SUPPORTS APPROVAL  OF THE
       SETTLEMENT, THE PLAN OF ALLOCATION, AND THE REQUESTED
       ATTORNEYS' FEE AND EXPENSE AWARD ............................................... 3

III.   CONCLUSION ............................................................................................ 5

i

## TABLE OF AUTHORITIES

Page(s)

CASES

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).................................................................................................4

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................................................5

*In re EVCI Career Colls. Holdings Corp. Sec. Litig.*,
   No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................4, 5

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ................................4

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................................5

*Maley v. Del. Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................................4, 5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)...................................................................................................4

Plaintiffs Louisiana Sheriffs' Pension and Relief Fund and Louisiana Municipal Police Employees' Retirement System (the "Bond Plaintiffs") and Bond Counsel respectfully submit this supplemental memorandum of law in further support of their motions (i) for final approval of the proposed $150 million cash settlement (the "Settlement") of the above-captioned consolidated class action (the "Bond Action" or "Action"), (ii) for approval of the proposed Plan of Allocation of the Settlement proceeds, and (iii) for an award of attorneys' fees and reimbursement of litigation expenses.[1]

## I.    PRELIMINARY STATEMENT

Bond Plaintiffs and Bond Counsel are pleased to advise the Court that *not a single objection* has been filed to the proposed Settlement, the proposed Plan of Allocation or to Bond Counsel's motion for an award of attorneys' fees and reimbursement of expenses. Additionally, the number of requests for exclusion from the Bond Class is *de minimus.* There are only twenty-five (25) requests for exclusion that contain all the required information. The requests for exclusion represent a miniscule portion of the eligible Bond Class Securities.[2]

Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice dated August 21, 2009 ("Preliminary Approval Order"), more than 156,000 copies of the Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing and Motion for

---

[1]  Unless otherwise noted, capitalized terms shall have the meanings set out in the Declaration of Max W. Berger and Mark Lebovitch in Support of Bond Plaintiffs' Motion for Final Approval of Class Action Settlement and Certification of the Bond Class and Motion for Approval of Plan of Allocation of Settlement Proceeds, and Bond Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Bond Counsel Declaration") and in the Stipulation and Agreement of Settlement dated August 12, 2009.

[2]  The requests for exclusion, based on the twenty-five (25) requests that contain transaction information, reflect that these persons or entities purchased only 0.029% of the Preferred Stock offering, and 0.074% of the Note offerings.

Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice") and Proof of Claim and Release ("Claim Form") have been mailed to potential Bond Class Members.[3] The Notice informed Class Members of the terms of the proposed Settlement, the terms of the proposed Plan of Allocation, and that Bond Counsel would be asking the Court for an award of attorneys' fees in an amount not to exceed 15% of the Settlement Fund and reimbursement of litigation expenses in an amount not to exceed $750,000.[4]

The Notice apprised Class Members about their right to object to any aspect of the proposed Settlement, Plan of Allocation and/or the request for attorneys' fees and reimbursement of expenses, their right to exclude themselves from the Class, and about the November 9, 2009 deadline for filing objections or requests for exclusion.[5] *See* Notice at p. 3 and ¶¶ 76, 81. Additionally, the Summary Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Summary Notice") was published in *The Wall Street Journal*, over the *PR Newswire*, and on the DTC Electronic Legal Notice System. *See* Affidavit of Richard W. Simmons of Analytics, Inc. Re: (A) Mailing of the Notice and the Claim Form; (B) Publication of Notice; and (C) Report on Exclusion Requests Received ("Simmons Mailing Affidavit," Exhibit 2 to Bond Counsel Declaration) at ¶¶ 16-17. The Summary Notice informed readers of the proposed settlement, how to obtain a copy of the Notice

---

[3] *See* Supplemental Affidavit of Richard W. Simmons of Analytics, Inc. Re: (A) Mailing of the Notice and the Claim Form; (B) Report on Exclusion Requests Received and (C) Claims Processing ("Supplemental Simmons Affidavit") at ¶ 5, attached hereto as Exhibit 1.

[4] For the Court's convenience, a copy of the Notice is attached hereto as Exhibit 2.

[5] The Notice further states that any objections must be served upon Bond Counsel and representative counsel for Defendants such that they are *received* no later than November 9, 2009. Notice at p. 3 and ¶ 81. With respect to requests for exclusion, the Notice states that they must be *received* by the Claims Administrator no later than November 9, 2009. *Id.* at p 3 and ¶ 76.

and Claim Form, and the deadlines for the submission of Claim Forms, objections and requests for exclusion. *See* Simmons Mailing Affidavit at Exhibits C and D.

While more than 8,000 Claim Forms have been received as of November 13, 2009 (and the deadline for filing claims is still seven weeks away) *not a single objection was filed*.

Additionally, and as further detailed in the Bond Counsel Declaration at ¶¶ 87-91 and 109-110, Bond Counsel has been and will continue to be in close and regular communication with the Claims Administrator in order to most efficiently address any questions or issues that may arise and to take every reasonable measure to assure that the Net Settlement Fund is distributed to Class Members as soon as practicable. *See* Supplemental Simmons Affidavit at ¶ 8. Bond Counsel is pleased to report that the claims processing procedures are proceeding apace with the timeline described in Bond Counsel's opening papers. *See* Bond Counsel Declaration at ¶¶ 87-91 and 109-110. Nevertheless, as previously noted, there is always the possibility that unforeseen circumstances could arise, including in particular delays that arise based on events that are beyond Bond Counsel's (or the Claims Administrator's) control.

## II.    THE BOND CLASS'S REACTION SUPPORTS APPROVAL OF THE SETTLEMENT, THE PLAN OF ALLOCATION, AND THE REQUESTED ATTORNEYS' FEE AND EXPENSE AWARD

Bond Plaintiffs and Bond Counsel respectfully submit that their opening papers in support of the proposed Settlement, the proposed Plan of Allocation, and the application for attorneys' fees and reimbursement of expenses demonstrate why approval of each motion is warranted. Now that the time for objecting or requesting exclusion from the Class has passed, the reaction of the Class powerfully buttresses that conclusion. No one has objected to any of the motions and only a very small number of requests for exclusion have been received. The reaction of the Class is strong evidence that the outcome achieved in this litigation is in the best interests of the Class, that the

proposed Plan of Allocation of the Settlement proceeds is equitable, and that Bond Counsel's fee request is reasonable.

In considering approval of a proposed class action settlement, the reaction of the class is the second factor listed by the Court of Appeals in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). As stated in *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005), "the favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in our *Grinnell* inquiry." *See also In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007) ("The strong favorable reaction of the class is overwhelming evidence that the Settlement is fair, reasonable and adequate."); *Maley v. Del. Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) (the "overwhelmingly positive response by the Class attests to the approval of the Class with respect to the Settlement and the fee and expense application"). Courts are particularly inclined to approve a class action settlement when, as here, not a single objection is received. *See Maley*, 186 F. Supp. 2d at 362 (the fact that "not a single objection to the Settlement was received" and that there were very few exclusions from the class was "strong evidence that the Settlement is fair, reasonable, and adequate"); *Veeco*, 2007 WL 4115809, at *7 ("The lack of objections provides effective evidence of the fairness of the Settlement."); *In re EVCI Career Colls. Holdings Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *6 (S.D.N.Y. July 27, 2007) (approving settlement with no objections).

With respect to the motion for approval of the proposed Plan of Allocation, courts give great weight to the opinion of experienced counsel. *See* Memorandum of Law in Support of Bond Plaintiffs' Motion for Approval of Plan of Allocation of Settlement Proceeds at 4. However, the uniform approval of the Class here is additional strong support for approval of the proposed Plan of

4

Allocation. *See EVCI*, 2007 WL 2230177, at *11 (noting that courts should "consider the reaction of a class to a plan of allocation" and that, where no objections are received "the Plan of Allocation should be approved"); *Maley*, 186 F. Supp. 2d at 367 (finding that "the favorable reaction of the Class supports approval of the proposed Plan of Allocation" where "no Class member ha[d] objected to the Plan"); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) ("the lack of any objections suggests that approval of the Plan of Allocation is warranted").

Finally, with respect to Bond Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses, in addition to the bases for approval set forth in Bond Counsel's opening memorandum and in the Bond Counsel Declaration, the fact that there are no objections from Bond Class members to the requested attorneys' fees or expense reimbursement strongly supports approval. The reaction of Class members to a fee and expense request "is entitled to great weight by the Court" and the absence of any objection "suggests that [a] fee request is fair and reasonable." *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007). *See also Maley*, 186 F. Supp. 2d at 374 (the lack of any objection to the fee request or expense reimbursement represented an "overwhelmingly positive response by the Class" and supported approval of fee and expense applications).

## III.    CONCLUSION

For the foregoing reasons and the reasons set forth in Bond Plaintiffs' and Bond Counsel's

opening papers, they respectfully request that the Court approve the proposed Settlement, Plan of

Allocation, and the request for attorneys' fees and reimbursement of expenses.

Dated: New York, New York             Respectfully submitted,
       November 16, 2009

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**


       /s/ Max W. Berger
By:  Max W. Berger
      Mark Lebovitch
1285 Avenue of the Americas
New York, New York  10019
Tel:  (212) 554-1400
Fax:  (212) 554-1444

*Bond Counsel*

# 419605.6

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. DERIVATIVE AND ERISA LITIGATION | |
| This Document Relates To: Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al., 08cv9063 (JSR)(DFE) | Master File No. 07-cv-9633 (JSR)(DFE) |

**SUPPLEMENTAL AFFIDAVIT OF RICHARD W. SIMMONS OF ANALYTICS, INC. RE: (A) MAILING OF THE NOTICE AND THE CLAIM FORM; (B) REPORT ON EXCLUSION REQUESTS RECEIVED AND (C) CLAIMS PROCESSING**

| | | |
|---|---|---|
| STATE OF MINNESOTA | ) | |
| | ) | SS: |
| COUNTY OF HENNEPIN | ) | |

RICHARD W. SIMMONS, being first duly sworn upon oath, states as follows:

1.  I am President of Analytics, Incorporated ("Analytics"), with offices at 18750 Lake Drive East, Chanhassen, Minnesota. Analytics was approved as Claims Administrator for the Settlement of the action styled *Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al.,* 08cv9063 (JSR)(DFE) (the "Merrill Bond Action") by this Court's Order Preliminarily Approving Settlement and Providing for Notice dated August 21, 2009 (the "Preliminary Approval Order"). I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently to the facts set forth in this affidavit.

2.  I submit this supplemental affidavit to provide the Court with updated information regarding, the mailing of additional copies of the Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice") and Proof of Claim and Release ("Claim Form" and together with the

Notice the "Claim Packet"), the receipt of additional requests for exclusion, and the claims administration process.

## UPDATE ON MAILING OF CLAIM PACKETS

3.       As set forth in detail in my affidavit Re: (A) Mailing of the Notice and the Claim Form; (B) Publication of Notice; and (C) Report on Exclusion Requests Received ("Simmons Mailing Affidavit"), that was filed with the Court on October 23, 2009, Analytics had mailed or caused to be mailed a total of one hundred three thousand one hundred thirty-three (103,133) Claim Packets individually or in bulk to individuals, nominees and institutions, as of October 16, 2009.

4.       As of November 9, 2009, Analytics has mailed or caused to be mailed an additional fifty-three thousand three hundred eleven (53,311) copies of the Claim Packet, individually or in bulk, to individuals, nominees and institutions.

5.       In the aggregate, Analytics has mailed or caused to be mailed a total of one hundred fifty-six thousand four hundred forty-four (156,444) copies of the Claim Packet as of November 9, 2009.  As a result of these mailings, Analytics received returned mail from the U.S. Postal Service. As of November 9, 2009, a total of one hundred ninety-three (193) Claim Packets were returned with forwarding addresses.  These Claim Packets were promptly re-mailed to the updated address.  In addition, as of November 9, 2009, a total of five hundred forty-five (545) Claim Packets were returned as undeliverable without a forwarding address.  On a periodic basis, Analytics ran these undeliverable records through the U.S. Postal Service's National Change of Address ("NCOA") database to see if updated address information was available. Additionally, Analytics conducted Internet-based searches for updated address information.  When the NCOA or other search was successful, Analytics re-mailed Claim Packets to those potential Class Members.  To the extent

2

Analytics receives any additional returned mail, it will attempt to locate a new address where practical.

## UPDATE ON EXCLUSION REQUESTS

6.      As provided in the Notice, written requests for exclusion from the Bond Class were required to be mailed by first class mail to be *received* no later than November 9, 2009, addressed to: Merrill Bond Action EXCLUSIONS, c/o Analytics, Incorporated, P.O. Box 2010, Chanhassen, MN 55317-2010. The Notice also set forth all the information that was required to be included in the request for exclusion. *See* Simmons Mailing Affidavit Exhibit A at ¶¶ 76-77. As set forth in the Simmons Mailing Affidavit, Analytics designed a database to track requests for exclusion received in connection with this Settlement. Every exclusion request is entered into this database and a scanned copy of the request is retained. Analytics has monitored all mail that has been delivered to that Post Office Box. As of November 9, 2009, Analytics received thirty-nine (39) submissions requesting exclusion and on November 13, 2009, Analytics received one additional request for exclusion.[1] Attached hereto as Exhibit A is a report summarizing the forty (40) requests received.

7.      Of the forty (40) requests, two (2) appear to be duplicative; three (3) were submitted by one couple for each of three separate accounts; two (2) were submitted by persons who are not Class Members; seven (7) were withdrawn;[2] and two (2) of the remaining requests do not provide any transaction information as required by the Preliminary Approval Order and as set forth in the Notice. Thus, there are only twenty-five (25) remaining requests for exclusion from apparent Class Members that contain all the required transaction data. *See* Exhibit B attached hereto.

---

[1] This requestor called Analytics on November 5, 2009, provided her transaction information and stated her desire to be excluded but did not mail her request on that date.

[2] I was advised by Bond Counsel that these persons withdrew their requests after telephone conversations with Bond Counsel.

## UPDATE ON CLAIMS PROCESSING

8.    As set forth in the Simmons Mailing Affidavit, Analytics is in regular communication with Bond Counsel. We continue to have telephone communications with Bond Counsel at least two or three times a week to address the status of the administration process and we provide weekly written reports regarding the number of claims received and processed. The deadline for the submission of Claim Forms is not until January 4, 2010. As of November 13, 2009, eight thousand twenty-seven (8,027) have been received.

9.    In the Simmons Mailing Affidavit, I set forth Analytics' estimate of time to complete the entire administration process through distribution of the Net Settlement Fund in its entirety. *See* Simmons Mailing Affidavit at ¶¶ 27-30. As set forth therein, we anticipate that the vast majority of the claims will be submitted at or close to the deadline and those usually include the most complex claims to process. *Id.* at ¶27. To date, no issues have arisen to cause us to alter the estimate of time to completion provided in the Simmons Mailing Affidavit. However, there are factors, many of which are beyond the control of Bond Counsel and the Claims Administrator, that could cause delays before the final distribution to the Class can be made.

Richard W. Simmons

Subscribed and sworn to before me
this 16 th day of November 2009

Notary Public

JESSICA R. BANG
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2012

4

# Exhibit A

## Summary of All Requests for Exclusion Received

|  | Date Rec'd | Name, City and State | Comments |
|---|---|---|---|
| 1. | 09/17/09 | Adam Kreysar and Tina Kreysar Fort Lauderdale, FL | Purchased 8,000 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 2. | 09/17/09 | Terry S. Marshall Temecula, CA | **WITHDRAWN** |
| 3. | 09/21/09 | Donna Mangus Rhoads Burton Lenoir City, TN | **WITHDRAWN** |
| 4. | 09/23/09 | Dr. Richard B. Bloom St. Petersburg, FL | Purchased 2,000 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 5. | 10/06/09 | Matthew and Diana G. Dollinger Long Beach, NY | Purchased 4,099 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 6. | 10/06/09 | Vera M. Schramm, TTEE Kenneth Schramm Family Trust Sheffield, AL | **WITHDRAWN** |
| 7. | 10/06/09 | Richele Keller Albuquerque, NM | $10,000 face amount of CUSIP 59018YJ69 [6.40% Medium-Term Notes, Series C] |
| 8. | 10/06/09 | Bob and Jean Hanback Florence, AL | **WITHDRAWN** |
| 9. | 10/14/09 | Harold E. and Imogene C. McCluskey Florence, AL | **WITHDRAWN** |
| 10. | 10/14/09 | Laverne E. and Gloria J. Campbell Williamsville, NY | Purchased 400 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 11. | 10/14/09 | Wayne Thorn and Anita Gardner Thorn Birmingham, AL | Purchased 1,000 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 12. | 10/19/09 | Floyd Babbitt IRA Buffalo Grove, IL | Purchased 1,000 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 13. | 10/19/09 | Floyd Babbitt IRA Buffalo Grove, IL | **DUPLICATE** |

| 14. | 10/19/09 | Milne LLC<br>Pittsburgh, PA | $720,000 face amount of CUSIP 59018YJ36 [6.05% Medium-Term Notes, Series C]<br>$3,870,000 face amount of CUSIP 59018YJ69 [6.40% Medium-Term Notes, Series C]<br>$1,105,000 face amount of CUSIP 59018YM40 [5.45% Medium-Term Notes, Series C]<br>$9,175,000 face amount of CUSIP 59018YN56 [6.15% Medium-Term Notes, Series C]<br>$845,000 face amount of CUSIP 59018YN64 [6.875% Medium-Term Notes, Series C] |
| --- | --- | --- | --- |
| 15. | 10/19/09 | O. Gene Reising<br>Evansville, IN | Purchased 500 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 16. | 10/21/09 | Mary L. Dickson Trust<br>Lihue, HI | Purchased 2,600 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 17. | 10/21/09 | Lenora Soscia<br>Warwick, RI | Purchased 1,000 shares of [8.625% Non-Cumulative Preferred Stock, Series 8 presumed] |
| 18. | 10/21/09 | Dorinda Cardillo<br>Sunrise, FL | Purchased 800 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 19. | 10/22/09 | William H. Martin<br>Hilton Head Island, SC | Purchased 1,000 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 20. | 10/23/09 | Frank Clemente, Jr.<br>Baton Rouge, LA | Purchased 800 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 21. | 10/26/09 | Adele Rappaport<br>Rockville Center, NY | References 8.625% Non-Cumulative Preferred but no transaction information. |
| 22. | 10/27/09 | Beverly Arline Farnsworth<br>Fernandina Beach, FL | Purchased 1,000 shares of [8.625% Non-Cumulative Preferred Stock, Series 8, presumed] |
| 23. | 10/28/09 | Joseph Ulanowski<br>Lansing, IL | Purchased 400 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 24. | 10/30/09 | Bernard and Rosalie Rychwalski Trust<br>Cape Coral, FL | Purchased 600 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |

| 25. | 11/2/09 | Elaine T. Koenig<br>Naples, FL | Purchased 650 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
|---|---|---|---|
| 26. | 11/2/09 | Shirley J. Leppold IRA<br>Pinellas Park, FL | Not a Class Member; purchased 1,000 shares of stock not covered in this action. |
| 27. | 11/2/09 | Robert A Lumley<br>Dolgeville, NY | Purchased 27 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 28. | 11/2/09 | Sharon E. Witkin IRA<br>Denver, CO | Purchased 400 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 29. | 11/2/09 | Bernard and Sharon Witkin<br>Denver, CO | Purchased 400 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 30. | 11/2/09 | Bernard Witkin IRA<br>Denver, CO | Purchased 400 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 31. | 11/3/09 | Pat S. Passannanti IRA<br>Ft. Lauderdale, FL | Purchased 300 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 32. | 11/5/09 | Seth J. Feinberg<br>Oakland, CA | Purchased 800 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 33. | 11/6/09 | C. Ronald Leppold<br>St. Petersburg, FL | **WITHDRAWN** |
| 34. | 11/6/09 | Patricia H. Vierengel<br>Jacksonville, FL | $51,000 face amount of CUSIP 59022CCS0 [5.70% Subordinated Notes due May 5, 2017] |
| 35. | 11/9/09 | Patricia H. Vierengel<br>Jacksonville, FL | **DUPLICATE** |
| 36. | 11/9/09 | Peter and Diane Gallagher<br>Sea Girt, NJ | Purchased 3,000 shares of [8.625% Non-Cumulative Preferred Stock, Series 8 [presumed] |
| 37. | 11/9/09 | EWT, LLC<br>Beverly Hills, CA | No transaction information. |
| 38. | 11/9/09 | Glenn P. Watts<br>Hendersonville, TN | **WITHDRAWN** |
| 39. | 11/9/09 | Share Family Trust<br>Los Angeles, CA | Not a Class Member, never owned any of the Bond Class Securities. |
| 40. | 11/13/09 | Ethel Corcoran<br>Charleston, SC | Purchased $50,000 face amount of CUSIP 59018YN56 [6.15% Medium-Term Notes, Series C] |

# Exhibit B

**Requests for Exclusion That Contain Transaction Data**
**(Excludes Duplicate and Extra Requests)**

|  | Date Rec'd | Name, City and State | Comments |
|---|---|---|---|
| 1. | 09/17/09 | Adam Kreysar and Tina Kreysar Fort Lauderdale, FL | Purchased 8,000 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 2. | 09/23/09 | Dr. Richard B. Bloom St. Petersburg, FL | Purchased 2,000 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 3. | 10/06/09 | Matthew and Diana G. Dollinger Long Beach, NY | Purchased 4,099 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 4. | 10/06/09 | Richele Keller Albuquerque, NM | $10,000 face amount of CUSIP 59018YJ69 [6.40% Medium-Term Notes, Series C] |
| 5. | 10/14/09 | Laverne E. and Gloria J. Campbell Williamsville, NY | Purchased 400 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 6. | 10/14/09 | Wayne Thorn and Anita Gardner Thorn Birmingham, AL | Purchased 1,000 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 7. | 10/19/09 | Floyd Babbitt IRA Buffalo Grove, IL | Purchased 1,000 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 8. | 10/19/09 | Milne LLC Pittsburgh, PA | $720,000 face amount of CUSIP 59018YJ36 [6.05% Medium-Term Notes, Series C] $3,870,000 face amount of CUSIP 59018YJ69 [6.40% Medium-Term Notes, Series C] $1,105,000 face amount of CUSIP 59018YM40 [5.45% Medium-Term Notes, Series C] $9,175,000 face amount of CUSIP 59018YN56 [6.15% Medium-Term Notes, Series C] $845,000 face amount of CUSIP 59018YN64 [6.875% Medium-Term Notes, Series C] |
| 9. | 10/19/09 | O. Gene Reising Evansville, IN | Purchased 500 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 10. | 10/21/09 | Mary L. Dickson Trust Lihue, HI | Purchased 2,600 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |

| 11. | 10/21/09 | Lenora Soscia<br>Warwick, RI | Purchased 1,000 shares of [8.625% Non-Cumulative Preferred Stock, Series 8 presumed] |
|---|---|---|---|
| 12. | 10/21/09 | Dorinda Cardillo<br>Sunrise, FL | Purchased 800 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 13. | 10/22/09 | William H. Martin<br>Hilton Head Island, SC | Purchased 1,000 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 14. | 10/23/09 | Frank Clemente, Jr.<br>Baton Rouge, LA | Purchased 800 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 15. | 10/27/09 | Beverly Arline Farnsworth<br>Fernandina Beach, FL | Purchased 1,000 shares of [8.625% Non-Cumulative Preferred Stock, Series 8, presumed] |
| 16. | 10/28/09 | Joseph Ulanowski<br>Lansing, IL | Purchased 400 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 17. | 10/30/09 | Bernard and Rosalie Rychwalski Trust<br>Cape Coral, FL | Purchased 600 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 18. | 11/2/09 | Elaine T. Koenig<br>Naples, FL | Purchased 650 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 19. | 11/2/09 | Robert A Lumley<br>Dolgeville, NY | Purchased 27 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 20. | 11/2/09 | Bernard and Sharon Witkin<br>Denver, CO | Purchased 400 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 21. | 11/3/09 | Pat S. Passannanti IRA<br>Ft. Lauderdale, FL | Purchased 300 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 22. | 11/5/09 | Seth J. Feinberg<br>Oakland, CA | Purchased 800 shares of 8.625% Non-Cumulative Preferred Stock, Series 8 |
| 23. | 11/6/09 | Patricia H. Vierengel<br>Jacksonville, FL | $51,000 face amount of CUSIP 59022CCS0 [5.70% Subordinated Notes due May 5, 2017] |
| 24. | 11/9/09 | Peter and Diane Gallagher<br>Sea Girt, NJ | Purchased 3,000 shares of [8.625% Non-Cumulative Preferred Stock, Series 8 [presumed] |
| 25. | 11/13/09 | Ethel Corcoran<br>Charleston, SC | Purchased $50,000 face amount of CUSIP 59018YN56 [6.15% Medium-Term Notes, Series C] |

# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | |
| This Document Relates To: Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al., 08cv9063 (JSR)(DFE) | Master File No. 07-cv-9633 (JSR)(DFE) |

**NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT,
SETTLEMENT FAIRNESS HEARING AND MOTION FOR ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES**

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

**NOTICE OF PENDENCY OF CLASS ACTION:  Please be advised that your rights may be affected by the above-captioned class action lawsuit pending in this Court (the "Bond Action") if you purchased or otherwise acquired any of the Bond Class Securities of Merrill Lynch & Co., Inc. ("Merrill" or the "Company") listed below from the dates they were first offered to the public for sale through and including January 15, 2009 (the "Class Period").**[1]

**The Bond Class Securities are:**

> **8.625% Non-Cumulative Preferred Stock, Series 8 (Cusip: 060505559 formerly known as 59023V373) ("Preferred Stock");**
> **6.11% Subordinated Notes due January 29, 2037 (Cusip: 59022CAJ2) ("6.11% Notes");**
> **5.70% Subordinated Notes due May 2, 2017 (Cusip: 59022CCS0) ("5.70% Notes");**
> **Medium-Term Notes, Series C (Cusip: 59018YE72) ("Medium-Term Notes");**
> **6.05% Medium-Term Notes, Series C (Cusip: 59018YJ36) ("6.05% Notes");**
> **6.40% Medium-Term Notes, Series C (Cusip: 59018YJ69) ("6.40% Notes");**
> **5.45% Medium-Term Notes, Series C (Cusip: 59018YM40) ("5.45% Notes");**
> **6.15% Medium-Term Notes, Series C (Cusip: 59018YN56) ("6.15% Notes");**
> **6.875% Medium-Term Notes, Series C (Cusip: 59018YN64) ("6.875% Notes"); and**
> **7.75% Subordinated Notes (Cusip: 59023VAA8) ("7.75% Notes").**

**NOTICE OF SETTLEMENT:  Please also be advised that Plaintiffs Louisiana Sheriffs' Pension and Relief Fund and Louisiana Municipal Police Employees' Retirement System (the "Bond Plaintiffs"), on behalf of the Bond Class (as defined in ¶1 below), have reached a proposed settlement of the Bond Action for a total of $150 million in cash that will resolve all claims in the Bond Action (the "Settlement").**

**This Notice explains important rights you may have, including your possible receipt of cash from the Settlement.  Your legal rights will be affected whether or not you act.  Please read this Notice carefully!**

1.  **Description of the Bond Action and the Bond Class**:  This Notice relates to a proposed Settlement of a class action lawsuit pending against the following defendants: (i) Merrill; (ii) certain of Merrill's former senior officers and directors – E. Stanley O'Neal, John A. Thain, Jeffrey N. Edwards, Laurence A. Tosi, Ahmass L. Fakahany, Gregory J. Fleming, Armando M. Codina, Jill K. Conway, Alberto Cribiore, John D. Finnegan, Heinz-Joachim Neubürger, David K. Newbigging, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Virgis W. Colbert, Judith Mayhew Jonas and Carol T. Christ (the "Individual Defendants"); and (iii) certain investment banks that acted as underwriters for the offerings of the Bond Class Securities, *i.e.*, Merrill Lynch, Pierce, Fenner & Smith, Inc., Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, SunTrust Robinson Humphrey, Inc., UBS Securities LLC, Wachovia Capital Markets, LLC, and Wells Fargo Securities, LLC (the "Underwriter

---

[1]  All capitalized terms that are not defined herein shall have the meaning ascribed to them in the Stipulation and Agreement of Settlement dated as of August 12, 2009.

Defendants," and together with Merrill and the Individual Defendants, the "Defendants"). The proposed Settlement, if approved by the Court, will apply to all persons and entities that purchased or otherwise acquired any Bond Class Securities during the Class Period, *i.e.*, from the first date on which the Bond Class Securities were offered for sale to the public through and including January 15, 2009, and were allegedly damaged thereby (the "Bond Class" or "Class"). Members of the Bond Class are referred to herein as "Class Members".

2. **Statement of Bond Class's Recovery**: Subject to Court approval, and as described more fully in ¶¶ 30-37 below, Bond Plaintiffs, on behalf of the Bond Class, have agreed to settle all claims based on the purchase or other acquisition of Bond Class Securities during the Class Period that were or could have been asserted against Defendants in the Bond Action in exchange for a settlement payment of $150,000,000 in cash (the "Settlement Amount") to be deposited into an interest-bearing escrow account. The Settlement Amount together with interest earned thereon is referred to as the "Settlement Fund". The Net Settlement Fund (the Settlement Fund less Taxes, Notice and Administration Costs, and attorneys' fees and litigation expenses awarded to counsel representing Bond Plaintiffs and the Class) will be distributed in accordance with a plan of allocation (the "Plan of Allocation") that will be approved by the Court and will determine how the Net Settlement Fund shall be allocated to Class Members. The Plan of Allocation is not intended to be an estimate of the amount that a Class Member might have been able to recover after a trial. It is solely a basis for determining the relative positions of Class Members for purposes of allocating the Net Settlement Fund. The proposed Plan of Allocation is included in this Notice. Bond Plaintiffs' damages expert estimates that approximately 204.15 million shares of Preferred Stock, 3.24 million 6.11% Notes, 1.13 million 5.70% Notes, 2.58 million Medium-Term Notes, 3.70 million 6.05% Notes, 3.87 million 6.40% Notes, 3.97 million 5.45% Notes, 2.41 million 6.15% Notes, 7.85 million 6.875% Notes and 2.85 million 7.75% Notes purchased by Class Members could have been affected by the conduct at issue in the Bond Action. If all Class Members elect to participate in the Settlement, the estimated average recovery per-share of Preferred Stock or per Note from the Settlement Fund would be approximately: $0.17 per affected share of Preferred Stock; $5.80 per affected 6.11% Note, $8.05 per affected 5.70% Note, $3.59 per affected Medium-Term Note, $2.80 per affected 6.05% Note, $3.60 per affected 6.40% Note, $2.32 per affected 5.45% Note, $3.16 per affected 6.15% Note, $2.69 per affected 6.875% Note, and $5.88 per affected 7.75% Note before the deduction of attorneys' fees and expenses as approved by the Court. Bond Class Members should note, however, that these are only estimates based on the overall number of potentially affected shares and notes in the Bond Class. Some Bond Class Members may recover more or less than these estimated amounts.

3. **Statement of Average Amount of Damages Per Share or Note**: The parties do not agree on the average amount of damages per share or note that would be recoverable if Bond Plaintiffs were to prevail after trial and any appeals. Defendants deny that any Bond Class Securities were damaged as Bond Plaintiffs have alleged. Defendants deny that the offering materials for the securities contained any material misrepresentations or omissions and they assert that they were prepared to establish that the prices of the Bond Class Securities declined in value for reasons not related to the disclosure of any allegedly false or misleading statements in the offering materials for the securities. The parties also disagree on the appropriate methodology for determining damages, if liability were established.

4. **Statement of Attorneys' Fees and Expenses Sought**: Bond Counsel (as defined in ¶5 below) will apply to the Court for an award of attorneys' fees to Plaintiffs' Counsel from the Settlement Fund in an amount not to exceed 15% of the Settlement Fund. In addition, Bond Counsel also will apply for the reimbursement of litigation expenses paid or incurred by Plaintiffs' Counsel in connection with the prosecution and resolution of the Bond Action (which may include the reasonable costs and expenses of Bond Plaintiffs directly related to their representation of the Bond Class), in an amount not to exceed $750,000. If the Court approves Bond Counsel's fee and expense application, the average cost per affected share of Preferred Stock and per affected $1,000 face amount Note will be approximately $0.03 per affected share of Preferred Stock; $0.90 per affected 6.11% Note, $1.25 per affected 5.70% Note, $0.56 per affected Medium-Term Note, $0.43 per affected 6.05% Note, $0.56 per affected 6.40% Note, $0.36 per affected 5.45% Note, $0.49 per affected 6.15% Note, $0.42 per affected 6.875% Note, and $0.91 per affected 7.75% Note.

5. **Identification of Attorneys' Representatives**: Bond Plaintiffs and the Bond Class are being represented by Bernstein Litowitz Berger & Grossmann LLP ("Bond Counsel"). Any questions regarding the Settlement should be directed to Mark Lebovitch, Esq. at Bernstein Litowitz Berger & Grossmann LLP, 1285 Avenue of the Americas, New York, NY 10019, (800) 380-8496, blbg@blbglaw.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **REMAIN A MEMBER OF THE BOND CLASS.** | This is the only way to get a payment. If you wish to obtain a payment as a Class Member, you will need to file a Proof of Claim form (which is included with this Notice) postmarked no later than January 4, 2010. |
| **EXCLUDE YOURSELF FROM THE BOND CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN NOVEMBER 9, 2009.** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against any of the Defendants or the other Released Parties concerning the claims that were, or could have been, asserted in this case. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING WRITTEN OBJECTIONS SO THAT THEY ARE *RECEIVED* NO LATER THAN NOVEMBER 9, 2009.** | Write to the Court and explain why you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of expenses. You cannot object to the Settlement unless you are a Class Member and do not exclude yourself. |
| **GO TO THE HEARING ON NOVEMBER 23, 2009 AT 4:00 P.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN NOVEMBER 9, 2009.** | Ask to speak in Court about the fairness of the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of expenses. |
| **DO NOTHING.** | Get no payment. Remain a Class Member. Give up your rights. |

## WHAT THIS NOTICE CONTAINS

| | |
|---|---|
| Why Did I Get This Notice? | Page 4 |
| What Is This Case About? What Has Happened So Far? | Page 5 |
| How Do I Know If I Am Affected By The Settlement? | Page 6 |
| What Are The Bond Plaintiffs' Reasons For The Settlement? | Page 7 |
| What Might Happen If There Were No Settlement? | Page 8 |
| How Much Will My Payment Be? | Page 8 |
| What Rights Am I Giving Up By Agreeing To The Settlement? | Page 12 |
| What Payment Are The Attorneys For The Class Seeking? How Will The Lawyers Be Paid? | Page 13 |
| How Do I Participate In The Settlement? What Do I Need To Do? | Page 13 |
| What If I Do Not Want To Be A Part Of The Settlement? How Do I Exclude Myself? | Page 14 |
| When And Where Will The Court Decide Whether To Approve The Settlement? Do I Have To Come To The Hearing? May I Speak At The Hearing If I Don't Like The Settlement? | Page 14 |
| What If I Bought Shares On Someone Else's Behalf? | Page 15 |
| Can I See The Court File? Whom Should I Contact If I Have Questions? | Page 16 |

3

### WHY DID I GET THIS NOTICE?

6.  This Notice is being sent to you pursuant to an Order of the United States District Court for the Southern District of New York (the "Court") because you or someone in your family may have purchased or otherwise acquired Bond Class Securities during the Class Period. The Court has directed us to send you this Notice because, as a potential Class Member, you have a right to know about your options before the Court rules on the proposed Settlement of this case. Additionally, you have the right to understand how a class action lawsuit may generally affect your legal rights. If the Court approves the Settlement, a claims administrator selected by Bond Plaintiffs and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

7.  A class action is a type of lawsuit in which the claims of a number of individuals are resolved together, thus providing the class members with both consistency and efficiency. In a class action lawsuit, the Court selects one or more people, known as class representatives, to sue on behalf of all people with similar claims, commonly known as the class or the class members. Once the class is certified, the Court must resolve all issues on behalf of the class members, except for any persons who choose to exclude themselves from the class. (For more information on excluding yourself from the Class, please read "What If I Do Not Want To Be A Part Of The Settlement? How Do I Exclude Myself?," located below.) In the Bond Action, the Court has directed that Bond Plaintiffs and Bond Counsel shall have primary responsibility for prosecuting all claims against Defendants on behalf of investors in Bond Class Securities.

8.  The Court in charge of this case is the United States District Court for the Southern District of New York, and the case is known as *Louisiana Sheriffs' Pension and Relief Fund, et al., v. Conway, et al.*, 08cv9063 (JSR) (DFE) (the "Bond Action") which was coordinated by the Court with the action known as *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation*, No. 07-cv-9633-JSR-DFE (the "Consolidated Securities Action").[2] The Judge presiding over this case is the Honorable Jed S. Rakoff, United States District Judge. The people who are suing are called plaintiffs, and those who are being sued are called defendants. In this case, the plaintiffs are referred to as the Bond Plaintiffs, on behalf of themselves and the Bond Class, and Defendants are Merrill, the Individual Defendants, and the Underwriter Defendants.

9.  This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. The purpose of this Notice is to inform you of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement if you wish to do so. It also is being sent to inform you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the proposed Settlement, the proposed Plan of Allocation, and the application by Bond Counsel for attorneys' fees and reimbursement of expenses (the "Settlement Hearing").

10. The Settlement Hearing will be held on November 23, 2009, at 4:00 p.m., before the Honorable Jed S. Rakoff, at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 14B, New York, New York 10007, to determine:

    (i)    whether the Bond Action should be finally certified, for settlement purposes only, as a class action under Rules 23(a) and (b) of the Federal Rules of Civil Procedure;

    (ii)   whether the proposed Settlement, the terms of which are set forth in a Stipulation and Agreement of Settlement dated as of August 12, 2009 (the "Stipulation") is fair, reasonable, and adequate and should be approved by the Court;

    (iii)  whether a judgment should be entered, dismissing the Bond Action, on the merits and with prejudice, and the release by the Class of the Released Parties (as defined in paragraph 68 below) should be ordered;

    (iv)   whether the proposed Plan of Allocation is fair and reasonable and should be approved by the Court; and

    (v)    whether Bond Counsel's request for an award of attorneys' fees and reimbursement of litigation expenses should be approved by the Court.

---

2  A settlement of part of the Consolidated Securities Action was previously reached. That settlement is not connected with the proposed Settlement of the Bond Action. Claim forms submitted in connection with the earlier settlement **do not** have any applicability to the proposed Settlement of the Bond Action described herein.

11. This Notice does not express any opinion by the Court concerning the merits of any claim in the Bond Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement, payments to Authorized Claimants will be made after any appeals are resolved, and after the completion of all claims processing. Please be patient.

## WHAT IS THIS CASE ABOUT? WHAT HAS HAPPENED SO FAR?

12. Merrill is a Delaware corporation with its principal executive office in New York, New York that provides a broad range of financial services to private clients, small businesses, institutions and corporations. Between October 2006 and May 2008, Merrill sold billions of dollars of debt and preferred securities to the investing public.

13. On October 3, 2008, Bond Plaintiffs commenced an action styled *Louisiana Sheriffs' Pension and Relief Fund and Louisiana Municipal Police Employees' Retirement System v. Conway et al.*, Index No. 650364/08 in New York State Supreme Court asserting claims for violations of Sections 11, 12 and 15 of the Securities Act of 1933 (the "Securities Act") on behalf of all persons who purchased or otherwise acquired Merrill securities in or traceable to the registered public offerings identified in the complaint filed against Merrill and certain underwriter defendants.

14. On October 16, 2008, Merrill and certain other defendants filed a motion to have the action transferred from the state court to the United States District Court for the Southern District of New York.

15. On October 22, 2008, the action was referred to the Honorable Jed S. Rakoff as a possibly related action to the Consolidated Securities Action, several securities actions pending in the United States District Court for the Southern District of New York which had been consolidated by order dated March 12, 2008.[3]

16. On December 3, 2008, Judge Rakoff issued an order coordinating the Consolidated Securities Action and the Bond Action for pre-trial purposes and directing that Bond Plaintiffs and Bond Counsel shall have primary responsibility for prosecuting all claims on behalf of investors in Merrill bonds and preferred shares that were identified in the Bond Action but not in the Consolidated Securities Action.

17. From mid to late December 2008, in connection with the negotiations that led to the settlement of the Consolidated Securities Action, the parties engaged in discussions regarding a settlement of the Bond Action but were not able to reach agreement. These discussions were renewed in late February 2009 and continued into March but, again, no agreement was reached.

18. On February 4, 2009, the District Court instructed the parties to brief a motion to dismiss addressed to the original complaint filed in the Bond Action in state court. Accordingly, on February 9, 2009, Defendants filed three separate motions to dismiss the Bond Action complaint. Defendants asserted, among other things, that the complaint was required to and failed to meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and that it failed to allege any untrue statement or actionable omission. On February 13, 2009, Bond Plaintiffs filed their opposition to the motions.

19. On February 17 and 19, 2009, the District Court heard oral argument on Defendants' motions. At the conclusion of the hearing, the Court gave Bond Plaintiffs until March 13, 2009 to file their amended complaint. On February 27, 2009, the Court issued a Memorandum Order stating that the Court had determined that the original complaint was subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure but that the Court would rule on the motions to dismiss only after an amended complaint was filed and further briefing on the motions was submitted.

20. On March 13, 2009, Bond Plaintiffs filed an Amended Class Action Complaint. A Corrected Amended Class Action Complaint was filed on March 18, 2009 (the "Amended Complaint"). The Amended Complaint asserts claims under Sections 11, 12 and 15 of the Securities Act of 1933 against Defendants arising from the offerings of the Bond Class Securities (the "Offerings"), and includes as additional plaintiffs NECA–IBEW Pension Trust

---

3  The Consolidated Securities Action alleged claims under the Securities Act and the Securities Exchange Act of 1934, and was brought on behalf of purchasers of Merrill common stock as well as purchasers in several offerings of Merrill preferred stock. The settlement of that action, which defines a settlement class of purchasers of the relevant securities between October 17, 2006 and December 31, 2008 inclusive, has been approved by the Court. The settlement in the Consolidated Securities Action does not cover the securities covered by the Bond Action.

Fund Pension Plan, Iron Workers Locals 40, 361, 417 Union Security Funds, Iron Workers Local 580 Joint Funds, City of Pontiac Police and Fire Retirement System and City of Pontiac General Employees Retirement System.

21. The Amended Complaint alleges, among other things, that the offering materials for the Bond Class Securities (the "Offering Materials") failed to accurately disclose the existence and value of tens of billions of dollars of complex derivative securities linked to subprime residential mortgages and Merrill's material dependence on certain financial guarantors to hedge those and other exposures to derivative securities. The Amended Complaint further alleges that the full extent and true nature of Merrill's exposures were not disclosed until January 15 and 16, 2009, following the announcement of a $138 billion financial bailout by the government to induce Bank of America Corporation ("BAC") to complete its acquisition of Merrill.

22. On March 27, 2009, Defendants moved to dismiss the Amended Complaint with prejudice on the grounds that, among other things (i) Plaintiffs failed to plead any actionable misrepresentations or omissions; and (ii) the Amended Complaint sounded in fraud and failed to meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Defendants have continued to assert that all claims asserted by Bond Plaintiffs on behalf of the Settlement Class are without merit.

23. On April 10, 2009, Plaintiffs filed a consolidated opposition to Defendants' motions to dismiss. Oral argument on the motions was set to take place on April 23, 2009.

24. After Bond Plaintiffs filed the Amended Complaint, settlement discussions were again renewed. These discussions, which continued through the briefing of Defendants' second motion to dismiss, culminated in an agreement in principle to settle the Bond Action which was reached on April 21, 2009.

25. In connection with the prosecution of the Bond Action, Bond Counsel has conducted an extensive factual and legal investigation relating to the claims and the underlying events and transactions alleged in the Amended Complaint, including reviewing and analyzing the Company's public filings with the Securities and Exchange Commission; reviewing and analyzing available news and research reports issued by securities analysts regarding Merrill and the bond industry, transcripts of Merrill investor conference calls, economic analyses of securities pricing data, and publicly available legal actions involving Merrill; contacting over 150 ex-Merrill employees and interviewing 87 of these potential witnesses; consulting with experts on collateralized debt obligations and related derivative securities, accounting and damages issues; and researching the applicable law with respect to the claims asserted against Defendants and the potential defenses thereto.

26. In addition, the agreement in principle to settle the Bond Action was conditioned on Bond Plaintiffs being satisfied with the results of further due diligence discovery to be completed. In connection with that due diligence discovery, Merrill and its outside auditor during the Class Period, Deloitte & Touche LLP ("Deloitte"), have collectively produced over thirty million pages of documents relevant to the claims asserted in the Bond Action which have been analyzed, and Bond Counsel has interviewed eight current or former Merrill employees with knowledge of the facts in this case.

27. Based upon their investigation and due diligence discovery, Bond Plaintiffs and Bond Counsel agree that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Class.

28. On August 21, 2009, the Court preliminarily approved the Settlement, authorized this Notice to be sent to potential Class Members, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

## HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT?

29. If you are a member of the Class, you are subject to the Settlement unless you timely request to be excluded. The Class consists of all persons and entities that purchased or otherwise acquired Bond Class Securities during the Class Period and were allegedly damaged thereby. Excluded from the Class are Merrill; BAC; the Individual Defendants; members of the immediate families of the Individual Defendants; the Underwriter Defendants; the Former Defendants; any entity in which any Defendant, Former Defendant or BAC has or had a controlling interest; the current and former directors and officers of or partners in: (i) Merrill; (ii) BAC; (iii) any of the Underwriter Defendants; or (iv) any of the Former Defendants, and the legal representatives, heirs, successors, or

assigns of any such excluded person or entity, provided that any Investment Vehicle (as defined in the Stipulation) shall not be deemed an excluded person or entity by definition. The Class also does not include those persons and entities who timely request exclusion from the Class pursuant to this Notice (*see* "What If I Do Not Want To Participate In The Class And The Settlement? How Do I Exclude Myself?," below).

**RECEIPT OF THIS NOTICE DOES NOT NECESSARILY MEAN THAT YOU ARE A CLASS MEMBER OR THAT YOU ARE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT. IF YOU WISH TO BE ELIGIBLE TO PARTICIPATE IN THE SETTLEMENT, YOU MUST SUBMIT THE ENCLOSED CLAIM FORM POSTMARKED NO LATER THAN JANUARY 4, 2010.**

## WHAT ARE THE BOND PLAINTIFFS' REASONS FOR THE SETTLEMENT?

30. Bond Plaintiffs and Bond Counsel believe that the claims asserted against Defendants have merit. Bond Plaintiffs and Bond Counsel recognize, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through trial and appeals, as well as the difficulties in establishing liability for violations of the federal securities laws and in rebutting Defendants' arguments that the losses suffered were attributable to factors other than the alleged wrongdoing.

31. In agreeing to the terms of the Settlement, Bond Plaintiffs and Bond Counsel took into account the possibility that the claims asserted in the Amended Complaint might have been dismissed in response to Defendants' motions to dismiss or anticipated motions for summary judgment or rejected by a jury at the trial stage. Bond Plaintiffs' initial complaint in this action was dismissed by the Court after briefing and a detailed oral argument. The Amended Complaint also faced a variety of legal hurdles. Among other things, there was a significant risk that the Court would apply a heightened pleading standard to Bond Plaintiffs' allegations that Merrill's derivative security valuations were false at the time they were made, and determine that the allegations were insufficiently detailed to meet such a standard.

32. Bond Plaintiffs also considered issues that would have been decided by a jury in the event of a trial of the Bond Action, including whether the alleged misrepresentations or omissions in the Offering Materials were material to investors and whether all of Class Members' losses were caused by the alleged misrepresentations or omissions. The claims asserted relate to collateralized debt obligations and derivative securities, including the use of financial guarantees as hedges for exposure to derivative securities. These claims raise complex issues of structured finance and would have required expert presentations. A "battle of experts," in and of itself, poses added significant risks with respect to a jury's determinations.

33. Furthermore, the amount of damages sustained by the Class, which also would have been the subject of expert testimony, has been, and would continue to be, seriously disputed by Defendants. Even if liability were established, there was a real risk that, after a trial of the action, the Class would have recovered an amount significantly less than the Settlement Amount or nothing at all. First, because of the nature and number of Bond Class Securities, presenting damages to a jury would raise complex issues not present in cases involving a single common stock security. Additionally, Defendants could succeed in severely limiting, or even eliminating recoverable damages, if they could establish that the declines in the value of the Bond Class Securities were attributable to factors other than the alleged wrongdoing. Bond Plaintiffs recognized that Defendants would cite to, among other things, (i) the fact that, at the time the action was initiated, many of the Bond Class Securities had substantially recovered in value since the Bank of America acquisition of Merrill was announced on September 15, 2008, a relevant factor under the controlling statute; and (ii) the extreme economic circumstances facing the economy as a whole, and the financial industry in particular.

34. Finally, Bond Plaintiffs and Bond Counsel have considered the fact that any recovery obtained after a verdict at trial would still be in jeopardy on appeal, and, even if the verdict were ultimately sustained on appeal, it could take years before the case was finally resolved.

35. In light of the amount of the Settlement and the immediacy of recovery to the Class, Bond Plaintiffs and Bond Counsel believe that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Class. The Settlement provides a substantial benefit now, namely $150,000,000 in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Bond Action would produce a similar, smaller, or no recovery after summary judgment, trial and appeals, possibly years in the future.

36.  Defendants have denied the claims asserted against them in the Bond Action and deny having engaged in any wrongdoing or violation of law of any kind whatsoever. Defendants assert that they have agreed to the Settlement solely to eliminate the burden and expense of continued litigation. Accordingly, the Settlement may not be construed as an admission of Defendants' wrongdoing.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

37.  If there were no Settlement and Bond Plaintiffs failed to establish any essential legal or factual element of their claims, neither Bond Plaintiffs nor the Class would recover anything from Defendants. Also, if Defendants were successful in proving any of their defenses, the Class likely would recover substantially less than the amount provided in the Settlement, or nothing at all.

## HOW MUCH WILL MY PAYMENT BE?

## THE PROPOSED PLAN OF ALLOCATION: GENERAL PROVISIONS

38.  Merrill has agreed to pay One Hundred and Fifty Million Dollars ($150,000,000) in cash into escrow for the benefit of the Class. At this time, it is not possible to make any determination as to how much individual Class Members may receive from the Settlement.

39.  After approval of the Settlement by the Court and upon satisfaction of the other conditions to the Settlement, the Net Settlement Fund will be distributed to Authorized Claimants (*i.e.*, persons and entities who are entitled to receive payment out of the Net Settlement Fund) in accordance with the Plan of Allocation. If, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, any funds remain in the Net Settlement Fund because of uncashed distributions or other reasons, then, any balance remaining in the Net Settlement Fund as of one (1) year after the initial distribution of such funds shall be redistributed *pro rata* to Authorized Claimants who have cashed their initial distribution and who would receive at least $20.00 from such redistribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution. If any funds shall remain in the Net Settlement Fund six (6) months after such redistribution, then such balance shall be contributed to non-sectarian, not-for-profit 501(c)(3) organizations recommended by Bond Counsel and approved by the Court.

40.  The Settlement Fund will be distributed as follows:

(i)  to pay all federal, state and local taxes on any income earned by the Settlement Fund and to pay the reasonable costs incurred in connection with determining the amount of, and paying, taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants);

(ii)  to pay costs and expenses in connection with providing Notice to Class Members and administering the Settlement on behalf of Class Members;

(iii)  to reimburse Plaintiffs' Counsel for the costs and expenses that Plaintiffs' Counsel incurred in commencing and prosecuting the Bond Action, with interest thereon and to reimburse Bond Plaintiffs for their reasonable costs and expenses directly related to their representation of the Class, if and to the extent allowed by the Court;

(iv)  to pay Plaintiffs' Counsel's attorneys' fees, to the extent allowed by the Court; and

(v)  to compensate Authorized Claimants with the balance of the Net Settlement Fund in accordance with the Plan of Allocation, subject to an Order of the Court approving the Settlement and the Plan of Allocation (or such other allocation plan as the Court may approve).

41.  The Net Settlement Fund will not be distributed until the Court has approved the Plan of Allocation or an alternative plan of allocation, and the time for any petition for rehearing, appeal or review, whether by certiorari or otherwise, has expired.

42.  Neither Defendants nor any other Person who paid any portion of the Settlement Fund on any of their behalves are entitled to get back any portion of the Settlement Fund once the Court's Order approving the Settlement becomes Final. None of the Defendants shall have any liability, obligation or responsibility for the administration of the Settlement or disbursement of the Net Settlement Fund or the Plan of Allocation.

43. Approval of the Settlement is independent from approval of the Plan of Allocation. Any determination with respect to the Plan of Allocation will not affect the Settlement, if approved.

44. Only those Class Members who purchased or otherwise acquired any of the Bond Class Securities listed on page 1 of this Notice during the Class Period *and have a Recognized Claim under the terms of the Plan of Allocation* will be eligible to share in the distribution of the Net Settlement Fund. Each person wishing to participate in the distribution must timely submit a valid Claim Form establishing membership in the Class, and including all required documentation as set forth in the Claim Form, postmarked no later than January 4, 2010 to the address set forth in the Claim Form that accompanies this Notice.

45. Unless the Court otherwise orders, any Class Member who fails to submit a Claim Form postmarked no later than January 4, 2010 shall be forever barred from receiving payments pursuant to the Settlement set forth in the Stipulation but will in all other respects remain a Class Member and be subject to the provisions of the Stipulation, including the terms of any judgment entered and releases given. This means that each Class Member releases the Released Claims (as defined in paragraph 67 below) against the Released Parties (as defined in paragraph 68 below) and is enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Claims against any of the Released Parties regardless of whether or not such Class Member submits a Claim Form.

46. The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Class Member.

47. The Court has also reserved the right to modify the Plan of Allocation without further notice to Class Members. All Orders regarding a modification of the Plan of Allocation will be posted on the settlement website, *www.merrillbondactionsettlement.com*.

48. The objective of the Plan of Allocation is to equitably distribute the settlement proceeds to those Class Members who suffered economic losses as a result of the alleged wrongdoing. The Plan of Allocation, developed by Bond Plaintiffs' damages expert, is generally based upon the statutory measure of damages for claims based on material misrepresentations in registration statements.

49. The calculation of a Recognized Claim pursuant to the Plan of Allocation is not intended to be an estimate of, nor indicative of, the amount that a Class Member might have been able to recover after a trial. The Plan of Allocation does not take into account various defenses and limitations on damages that a jury could have accepted, which would diminish the amount of any eventual recovery. Nor is the calculation of a Recognized Claim pursuant to the Plan of Allocation an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement. That amount will depend upon the total amount of all Recognized Claims. The Recognized Claim formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants. This computation is only a method to weigh Class Members' claims against one another. Each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Claim. The proposed Plan of Allocation generally measures the amount of loss that a Class Member may claim under the Settlement for the purpose of making *pro rata* allocations of the Net Settlement Fund to Class Members who submit acceptable Proofs of Claim.

## CALCULATION OF RECOGNIZED LOSS OR GAIN AMOUNTS

50. A "Recognized Loss or Gain Amount" will be calculated for each share of Preferred Stock or Note purchased or acquired during the Class Period (*i.e.*, from the first day on which the security was offered for sale to the public through and including January 15, 2009) *and* which, if offered for sale prior to October 24, 2007, was still owned as of the close of trading on October 24, 2007 (the first day that any of the allegedly wrongfully withheld or misrepresented information began to enter the market), and for which adequate documentation is provided ("Eligible Preferred Stock" and "Eligible Notes").[4] The calculation of the Recognized Loss or Gain Amount will depend upon several factors, including (i) when the Bond Class Securities were purchased or acquired; and (ii) whether they were sold, and if so, when they were sold.

---

4   Any Bond Class Security sold before October 24, 2007 shall have a Recognized Loss/Gain Amount of "0".

1.   For each share of Eligible Preferred Stock and each Eligible Note that was sold prior to March 13, 2009, the Recognized Loss Amount per share or note shall be the difference between the amount paid for the share or note (not exceeding the price at which the share or note was offered to the public) and the price at which the share or note was sold before March 13, 2009. The Recognized Loss Amount cannot be less than zero. If the price at which the share or note was sold exceeds the amount paid, then the difference between the price at which the share or note was sold and the amount paid shall be the Recognized Gain Amount.

2.   For each share of Eligible Preferred Stock and each Eligible Note that was sold between March 13, 2009 and April 27, 2009, the Recognized Loss Amount per share or note shall be the difference between the amount paid for the share or note (not exceeding the price at which the share or note was offered to the public) and *the higher of* (i) the price at which the share or note was sold between March 13, 2009 and April 27, 2009; and (ii) the value of the share or note as of March 13, 2009.[5] The Recognized Loss Amount cannot be less than zero. If the price at which the share or note was sold exceeds the amount paid, then the difference between the price at which the share or note was sold and the amount paid shall be the Recognized Gain Amount.

3.   For each share of Eligible Preferred Stock and Each Eligible Note that was still owned as of the close of trading on April 27, 2009, the Recognized Loss Amount per share or note shall be the difference between the amount paid for the share or note (not exceeding the price at which the share or note was offered to the public) and the value thereof on March 13, 2009. The Recognized Loss Amount cannot be less than zero. If the value of the share or note as of March 13, 2009 exceeds the amount paid, then the difference between the value as of March 13, 2009 and the amount paid shall be the Recognized Gain Amount.

51. Establishing a claim for damages for purchases of the securities after the issuer has made generally available an earnings statement covering a period of at least twelve months beginning after the effective date of the registration statement imposes an additional burden on plaintiffs not present with respect to earlier purchases of those securities. Because this claim is more difficult to establish, the Recognized Loss Amount for affected purchases or acquisitions will be reduced by 20%. The affected transactions are: (i) purchases or acquisitions of 6.11% Notes after May 5, 2008; (ii) purchases or acquisitions of 5.70% Notes after August 5, 2008; (iii) purchases or acquisitions of Medium Term Notes after August 5, 2008; (iv) purchases or acquisitions of 6.05% Notes after November 4, 2008; and (v) purchases or acquisitions of 6.40% Notes after November 4, 2008.

52. Each Authorized Claimant's "Recognized Claim" shall be calculated by (1) totaling all Recognized Loss Amounts, and (2) subtracting from that amount the total of all Recognized Gain Amounts.

UNLESS A CLASS MEMBER HAD A NET RECOGNIZED LOSS ON HIS, HER OR ITS PURCHASES OR OTHER ACQUISITIONS MADE DURING THE CLASS PERIOD IN BOND CLASS SECURITIES, THE AMOUNT OF THE CLASS MEMBER'S RECOGNIZED CLAIM SHALL BE ZERO.

## ADDITIONAL PROVISIONS

53. If the sum total of Recognized Claims of all Authorized Claimants is greater than the Net Settlement Fund, each such Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of all Recognized Claims to be paid from the Net Settlement Fund, multiplied by the total amount in the Net Settlement Fund. If the prorated payment calculates to less than $20.00, it will not be included in the calculation and it will not be distributed.

54. If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants, the excess amount in the Net Settlement Fund shall be distributed *pro rata* to all Authorized Claimants.

55. If a Class Member has more than one purchase/acquisition or sale of Bond Class Securities through April 27, 2009, the Recognized Loss or Gain Amount for each such security shall be determined on a First In, First Out

---

5   The value of each security as of March 13, 2009 is based on the most recent closing price available and is as follows for each security: (i) $9.11 per share for each share of Preferred Stock; (ii) $480.00 per 6.11% Note; (iii) $526.25 per 5.70% Note; (iv) $760.00 per Medium-Term Note; (v) $785.00 per 6.05% Note; (vi) $734.60 per 6.40% Note; (vii) $779.11 per 5.45% Note; (viii) $712.35 per 6.15% Note; (ix) $796.31 per 6.875% Note; and (x) $500.00 per 7.75% Note.

("FIFO") method, such that all such sales will be matched against any purchases/acquisitions of the like Bond Class Security in chronological order, beginning with the earliest purchase/acquisition.

56. Purchases or other acquisitions and sales of Bond Class Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.

57. The receipt or grant by gift, inheritance or operation of law of Bond Class Securities during the Class Period shall not be deemed a purchase or acquisition of such security for the calculation of a Claimant's Recognized Loss or Gain Amounts nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such Bond Class Securities unless (i) the donor or decedent purchased or otherwise acquired such Bond Class Securities during the Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Bond Class Securities; and (iii) it is specifically so provided in the instrument of gift or assignment. If the requirements of the preceding sentence are satisfied such Bond Class Securities shall be deemed purchased by the Claimant on the original date of purchase by the donor, decedent or transferor and not the date of transfer. Accordingly, if the donor, decedent or transferor did not purchase the subject Bond Class Securities during the Class Period, those Bond Class Securities shall be excluded from the computation of the Claimant's Recognized Claim.

58. All transaction amounts for purchases and sales of Bond Class Securities should be net of commissions, taxes, and fees. All transaction amounts for purchases and sales of notes should exclude the amount, if any, of accrued interest paid or received.

59. The date of covering a "short sale" is deemed to be the date of purchase or other acquisition of Bond Class Securities. The date of a "short sale" is deemed to be the date of sale of Bond Class Securities. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero.

60. To the extent a Claimant had an overall market gain with respect to his, her, or its Class Period purchases or acquisitions of Bond Class Securities, the value of the Recognized Claim will be zero. Such Claimants will in any event be bound by the Settlement. To the extent that a Claimant suffered an overall market loss with respect to his, her, or its purchases or acquisitions of Bond Class Securities during the Class Period, but that loss was less than the total Recognized Claim calculated above, then the Claimant's Recognized Claim shall be limited to the amount of the actual market loss.

61. For purposes of determining whether a Claimant had an overall market gain with respect to his, her, or its Class Period purchases of Bond Class Securities during the Class Period or suffered an overall market loss, the Claims Administrator shall determine the difference between (i) the Total Purchase Amount[6] and (ii) the sum of the Sales Proceeds[7] and the Holding Value[8]. This difference will be deemed a Claimant's market gain or loss on his, her, or its overall transactions in Bond Class Securities during the Class Period.

62. Payment pursuant to the Plan of Allocation approved by the Court shall be conclusive against all Authorized Claimants. No person shall have any claim against Bond Plaintiffs, Bond Counsel, any other Plaintiffs and Plaintiffs' Counsel in the Bond Action, Lead Plaintiff in the Consolidated Securities Action or its counsel, Defendants, Defendants' Counsel, the other Released Parties or their counsel, or the Claims Administrator or other agent designated by Bond Counsel arising from distributions made substantially in accordance with the Stipulation, the Plan of Allocation, or further orders of the Court. Bond Plaintiffs, Bond Counsel, Defendants, Defendants' Counsel, the other Released Parties and their counsel shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any Claim Form or nonperformance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

---

6  The "Total Purchase Amount" is the total amount the Claimant paid for all of the Bond Class Securities purchased or acquired during the Class Period.

7  The "Sales Proceeds" is the total amount the Claimant received for all of the Bond Class Securities purchased during the Class Period that were sold through April 27, 2009.

8  The Claims Administrator shall ascribe a value to each Bond Class Security still held as of the close of trading on April 27, 2009 ("Holding Value") which shall be equal to the values set forth in footnote 5 above.

63. Each Claimant shall be deemed to have submitted to the jurisdiction of the United States District Court for the Southern District of New York with respect to his, her or its Proof of Claim.

64. Persons and entities that exclude themselves from the Bond Class will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Proof of Claim forms.

65. The Plan of Allocation set forth herein is the plan that is being proposed by Bond Plaintiffs and Bond Counsel to the Court for approval. The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Class.

## WHAT RIGHTS AM I GIVING UP BY AGREEING TO THE SETTLEMENT?

66. If the Settlement is approved, the Court will enter a judgment (the "Judgment"). The Judgment will dismiss with prejudice the claims against Defendants and will provide that Bond Plaintiffs and all other Class Members shall be deemed to have -- and by operation of the Judgment shall have -- released, dismissed and forever discharged the Released Claims (as defined in paragraph 67 below), including Unknown Claims (as defined in paragraph 69 below) against each and all of the Released Parties (as defined in paragraph 68 below).

67. "Released Claims" means any and all claims, actions, debts, demands, set-offs (both legal and equitable), causes of action, rights or liabilities whatsoever (including, but not limited to, any claims for damages, equitable relief, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, foreign, Commonwealth of Puerto Rico, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, whether direct, representative, class, individual or in any other form, including both known claims and Unknown Claims (as defined in paragraph 69 below), that have been or could have been asserted in any forum by the Settlement Class Members against any of the Released Parties, which arise out of or relate to or are based in whole or in part upon any of the allegations, transactions, facts, matters or occurrences, representations, disclosures, statements or omissions alleged, involved, set forth, or referred to in the Amended Complaint, in connection with such Settlement Class Members' purchase or acquisition of Bond Class Securities during the Settlement Class Period. Released Claims includes only the claims that were or could have been asserted on behalf of purchasers or acquirers of the Bond Class Securities during the Settlement Class Period. Released Claims specifically excludes the claims asserted in (1) all securities class actions consolidated into docket number 07cv9633by order dated March 12, 2008; (2) all derivative actions consolidated into docket number 07cv9696 by order dated March 12, 2008, the derivative action captioned *Lambrecht v. O'Neal*, 08cv6582, and all derivative actions involving substantially similar facts; (3) the ERISA actions consolidated into docket number 07cv10268 by order dated March 12, 2008 and (4) all actions consolidated into docket number 08cv10841(JSR) by orders entered April 2, 2009, May 19, 2009 and May 21, 2009. It is also expressly understood that no release is given to any Released Party in connection with any purchase, acquisition, or retention of BAC securities by any purchaser, acquirer, or holder of BAC securities other than with respect to 8.625% Non-Cumulative Preferred Stock, Series 8 (060505559 formerly known as 59023V373) through and including January 15, 2009.

68. "Released Parties" means Defendants, the Former Underwriter Defendants[9], Deloitte, and their respective heirs,

---

9   The Former Underwriter Defendants are ANZ Securities, Inc.; Banc of America Securities, LLC; Barclays Capital Inc.; BB&T Capital Markets, a division of Scott & Stringfellow, Inc.; BBVA Securities, Inc.; Blaylock Robert Van, LLC; BMO Capital Markets Corp.; BNY Mellon Financial Markets LLC, independently and as successor to BNY Capital Markets, Inc. and Mellon Financial Markets, LLC.; Cabrera Capital Markets, LLC; CastleOak Securities L.P.; Charles Schwab & Co., Inc.; CIBC World Markets Corp.; Credit Suisse Securities (USA) LLC; D.A. Davidson & Co.; Davenport & Company LLC; Deutsche Bank Securities Inc.; Ferris, Baker Watts, Incorporated; Fidelity Capital Markets, a division of National Financial Services LLC; Fifth Third Securities, Inc.; Fixed Income Securities, Inc.; Fortis Securities LLC; FTN Financial Securities Corp.; Greenwich Capital Markets, Inc.; H&R Block Financial Advisors, Inc.; HSBC Securities (USA); HVB Capital Markets, Inc.; J.B. Hanauer & Co.; J.J.B. Hilliard, W.L. Lyons, Inc.; Jackson Securities LLC; Janney Montgomery Scott LLC; Jefferies & Company, Inc.; KBC Financial Products USA, Inc.; Keefe, Bruyette & Woods, Inc.; KeyBanc Capital Markets Inc.; Loop Capital Markets; Mesirow Financial, Inc.; Mizuho Securities USA Inc.; Morgan Keegan & Company, Inc.; Muriel Siebert & Co., Inc.; nabCapital Securities, LLC; NatCity Investments, Inc.; Natixis Bleichroeder Inc.; Oppenheimer & Co., Inc.; Pershing LLC; PNC Capital Markets LLC; Raymond James & Associates, Inc.; RBC Capital Markets Corporation, independently and as successor to RBC Dain Rauscher Inc.; Robert W. Baird & Co. Incorporated; Samuel A. Ramirez & Co., Inc.; Santander Investment Securities Inc.; Sterne Agee Capital Markets, Inc.; Stifel, Nicolaus & Company, Incorporated; Stone & Youngberg LLC; TD Ameritrade, Inc.; The Williams Capital Group, L.P.; Toussaint Capital Partners, LLC; UniCredit Capital Markets, Inc.; Utendahl Capital Partners, L.P.; Vining-Sparks IBG, Limited Partnership; Wachovia Securities, Inc.; Wedbush Morgan Securities Inc.; William Blair & Company, L.L.C.; and Zions Direct, Inc.

executors, personal representatives, estates and administrators; their respective past, present and future parent entities, affiliates, related parties, subsidiaries, predecessors and successors; and each of their respective past, present and future assigns, insurers, partners, officers, directors, controlling persons, representatives, employees, agents, attorneys, counsel, underwriters, and financial or investment advisors.

69.  "Unknown Claims" means any and all Released Claims that Plaintiffs and any other Settlement Class Member do not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties and any and all Released Parties' Claims that any Defendant or other Released Party does not know or suspect to exist in his, her or its favor, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement.  With respect to any and all Released Claims and Released Parties' Claims (as defined in paragraph 70 below), the parties stipulate and agree that upon the Effective Date, Bond Plaintiffs and Defendants shall expressly, and each of the other Settlement Class Members and each of the other Released Parties shall be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Bond Plaintiffs and Defendants acknowledge, and the other Settlement Class Members and the other Released Parties by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Released Parties' Claims was separately bargained for and was a key element of the Settlement.

70.  The Judgment also will provide that Defendants and each of the Other Released Parties shall be deemed to have – and by operation of the Judgment shall have – fully, finally, and forever released, waived, discharged and dismissed any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, foreign, Commonwealth of Puerto Rico, local, statutory or common law or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Bond Action or any forum by the Released Parties or any of them or the successors and assigns of any of them against any of the Plaintiffs, Lead Plaintiff in the Consolidated Securities Action, other Settlement Class Members or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Bond Action (except for claims to enforce the Settlement), *i.e.*, the Released Parties' Claims.

## WHAT PAYMENT ARE THE ATTORNEYS FOR THE CLASS SEEKING?
## HOW WILL THE LAWYERS BE PAID?

71.  Plaintiffs' Counsel have not received any payment for their services in pursuing claims against Defendants on behalf of the Class, nor have Plaintiffs' Counsel been reimbursed for their out-of-pocket expenses.  Before final approval of the Settlement, Bond Counsel intends to apply to the Court for an award of attorneys' fees to Plaintiffs' Counsel from the Settlement Fund in an amount not to exceed 15% of the Settlement Fund.  At the same time, Bond Counsel also intends to apply for the reimbursement of litigation expenses to Plaintiffs' Counsel (which may include the reasonable costs and expenses of Bond Plaintiffs directly related to their representation of the Bond Class), in an amount not to exceed $750,000.  The Court will determine the amount of the award.

## HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?

72.  If you purchased or otherwise acquired Bond Class Securities during the Class Period, and you are not excluded by the definition of the Class and you do not elect to exclude yourself from the Class, then you are a Class Member, and you will be bound by the proposed Settlement if the Court approves it, and by any judgment or determination of the Court affecting the Class.  If you are a Class Member, you must submit a Claim Form and supporting documentation to establish your entitlement to share in the Settlement.  A Claim Form is included with this Notice, or you may go to the website maintained by the Claims Administrator for the Settlement to request that a Claim Form be mailed to you.  The website is *www.merrillbondactionsettlement.com*.  You may also request a Claim Form by calling toll-free 1-877-441-2792.  Copies of the Claim Form can also be downloaded from Bond Counsel's website at *www.blbglaw.com/cases/*.  Those who exclude themselves from

the Class, and those who do not submit timely and valid Claim Forms with adequate supporting documentation will not be entitled to share in the Settlement.  Please retain all records of your ownership of, or transactions in Bond Class Securities, as they may be needed to document your Claim.

73. As a Class Member, you are represented by Bond Plaintiffs and Bond Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her notice of appearance on the attorneys listed in the section entitled, "When and Where Will the Court Decide Whether to Approve the Settlement?," below.

74. If you do not wish to remain a Class Member, you may exclude yourself from the Class by following the instructions in the section entitled, "What If I Do Not Want To Be A Part Of The Class And The Settlement?  How Do I Exclude Myself?," below.  If you exclude yourself from the Class, you will not be eligible to receive any benefit from the Settlement and you should not submit a Claim Form but you will retain the right to be a part of any other lawsuit against any of the Released Parties (as defined in paragraph 68 above) with respect to any of the Released Claims (as defined in paragraph 67 above).

75. If you wish to object to the Settlement or any of its terms, the proposed Plan of Allocation, or Bond Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if you do not exclude yourself from the Class, you may present your objections by following the instructions in the section entitled, "When and Where Will the Court Decide Whether to Approve the Settlement?," below.  If you exclude yourself from the Class, you are not entitled to submit an objection.

## WHAT IF I DO NOT WANT TO BE A PART OF THE SETTLEMENT?
## HOW DO I EXCLUDE MYSELF?

76. Each Class Member will be bound by all determinations and judgments in this lawsuit, including those concerning the Settlement, whether favorable or unfavorable, unless such person or entity mails, by first-class mail (or its equivalent outside the U.S.), or otherwise delivers a written Request for Exclusion from the Class, addressed to "Merrill Bond Action - EXCLUSIONS, - c/o Analytics, Incorporated, Claims Administrator, P.O. Box 2010, Chanhassen, MN 55317-2010."  The exclusion request must be *received* no later than November 9, 2009.  You will not be able to exclude yourself from the Class after that date.  Each Request for Exclusion must (i) state the name and address of the person or entity requesting exclusion; (ii) state that such person or entity "requests exclusion from the Class in the Merrill Bond Action, 08-cv-9063 (JSR)(DFE)"; (iii) be signed by the person or entity requesting exclusion; (iv) provide a telephone number for that person or entity; and (v) provide the date(s), price(s), and number(s) of shares or notes for all purchases and other acquisitions and sales of Bond Class Securities during the Class Period.  Requests for exclusion will not be valid if they do not include the information set forth above and they are not received within the time stated above, unless the Court otherwise determines.

77. If you do not want to be part of the Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Claims.

78. If a person or entity requests to be excluded from the Class, that person or entity will not receive any benefit provided for in the Stipulation.

## WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? DO I HAVE TO COME TO THE HEARING? MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?

79. **If you do not wish to object in person to the proposed Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and reimbursement of litigation expenses, you do not need to attend the Settlement Hearing.  You can object to or participate in the Settlement without attending the Settlement Hearing.**

80. The Settlement Hearing will be held on November 23, 2009, at 4:00 p.m., before the Honorable Jed S. Rakoff, at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 14B, New York, New York 10007.  The Court reserves the right to approve the Settlement or the Plan of Allocation at or after the Settlement Hearing without further notice to the members of the Class.

14

81.  Any Class Member who does not request exclusion *received* no later than November 9, 2009 may object to the Settlement, the Plan of Allocation, or Bond Counsel's request for an award of attorneys' fees and reimbursement of expenses. Objections or oppositions must be in writing. You must file any written objection or opposition, together with copies of all other papers (including proof of all purchases or acquisitions of Bond Class Securities during the Class Period) and briefs, with the Clerk's Office at the United States District Court for the Southern District of New York at the address set forth below on or before November 9, 2009. You must also serve the papers on Bond Counsel for the Class and representative counsel for the Defendants at the addresses set forth below so that the papers are *received* on or before November 9, 2009.

|  |  | **Representative Counsel** |
| --- | --- | --- |
| **Clerk's Office** | **Bond Counsel for the Class** | **For Defendants** |
| UNITED STATES DISTRICT | BERNSTEIN LITOWITZ BERGER | SKADDEN, ARPS, SLATE, |
| COURT FOR THE SOUTHERN | & GROSSMANN LLP | MEAGHER & FLOM LLP |
| DISTRICT OF NEW YORK | Mark Lebovitch, Esq. | Jay B. Kasner, Esq. |
| 500 Pearl Street | 1285 Avenue of the Americas | Four Times Square |
| New York, New York 10007 | New York, NY 10019 | New York, New York 10036 |

82.  The filing must demonstrate your membership in the Class, including the number of Bond Class Securities purchased or otherwise acquired or sold during the Class Period and the price(s) paid and received. You may not object to the Settlement or any aspect of it, if you excluded yourself from the Class.

83.  You may file a written objection without having to appear at the Settlement Hearing. You may not appear at the Settlement Hearing to present your objection, however, unless you first filed and served a written objection in accordance with the procedures described above, unless the Court orders otherwise.

84.  If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation, or Bond Counsel's request for an award of attorneys' fees and reimbursement of expenses, and if you have filed and served a timely written objection as described above, you also must notify the above counsel on or before November 9, 2009 concerning your intention to appear. Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing.

85.  You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing. If you decide to hire an attorney, which will be at your own expense, however, he or she must file a notice of appearance with the Court and serve it on Bond Counsel so that the notice is *received* on or before November 9, 2009.

86.  The Settlement Hearing may be adjourned by the Court without further written notice to the Class. If you intend to attend the Settlement Hearing, you should confirm the date and time with Bond Counsel.

**Unless the Court orders otherwise, any Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation, or Bond Counsel's request for an award of attorneys' fees and reimbursement of expenses. Class Members do not need to appear at the hearing or take any other action to indicate their approval.**

## WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF?

87.  If you purchased or otherwise acquired Bond Class Securities during the Class Period for the beneficial interest of a person or organization other than yourself, you must either (i) send a copy of this Notice to the beneficial owner of such Bond Class Securities, postmarked no later than seven (7) days after you receive this Notice, or (ii) provide the names and addresses of such persons no later than seven (7) days after you receive this Notice to Merrill Bond Action, c/o Analytics, Incorporated, Claims Administrator, P.O. Box 2010, Chanhassen, MN 55317-2010. If you choose the second option, the Claims Administrator will send a copy of the Notice to the beneficial owner. Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. Copies of this Notice and the Proof of Claim form

can be obtained from the website maintained by the Claims Administrator, *www.merrillbondactionsettlement.com*, or by calling toll-free 1-877-441-2792, or from Bond Counsel's website, *www.blbglaw.com*.

## CAN I SEE THE COURT FILE? WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

88.    This Notice contains only a summary of the terms of the proposed Settlement. More detailed information about the matters involved in the Bond Action is available at *www.merrillbondactionsettlement.com*, including, among other documents, copies of the Stipulation, Proof of Claim form, the Amended Complaint and the Court's Order on the Defendants' motions to dismiss the Bond Action. All inquiries concerning this Notice or the Claim Form should be directed to:

Merrill Bond Action

℅ Analytics, Incorporated, Claims Administrator

P.O. Box 2010

Chanhassen, MN 55317-2010

1-877-441-2792

**OR**

Mark Lebovitch, Esq.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

1285 Avenue of the Americas

New York, NY 10019

(800) 380-8496

blbg@blbglaw.com

**Bond Counsel**

**DO NOT CALL OR WRITE THE COURT OR THE OFFICE OF THE CLERK OF COURT REGARDING THIS NOTICE.**

Dated:  September 4, 2009                                       By Order of the Clerk of Court
                                                                               United States District Court
                                                                               for the Southern District of New York